2006 OK 20

**Janelle H. STELTZLEN,
Petitioner/Appellant,**

v.

**Greggory Kendall FRITZ,
Respondent/Appellee.**

No. 102,430.

Supreme Court of Oklahoma.

April 4, 2006.

John M. O'Connor, Jennifer K. Kern, Newton, O'Connor, Turner & Ketchum, P.C., Tulsa, OK, for Appellant.

Frank P. Lockhart, Sandra J. Frazier, Frazier & Lockhart, P.C., Sapulpa, OK, for Appellee.

Amy L. Underwood, Tulsa County Public Defenders Office, Tulsa, OK, for Minor Child.

HARGRAVE, J.

¶ 1 This only question presented by this appeal is whether the trial judge abused her discretion in denying petitioner's application to adopt the minor child J.E.D. without the consent of her natural father, Greggory Fritz.[1] The trial judge found that the petitioner concealed the child from Greggory Fritz and that the petitioner failed to prove willful failure to support or maintain a substantial relationship on the part of the father. The trial judge denied the application to declare the child eligible for adoption without the father's consent. We find no abuse of discretion and affirm the trial court.

¶ 2 The child, J.E.D., was born out of wedlock on December 1, 2000, to Merriellen Davenport. No father was listed on the birth certificate. The petitioner for adoption is Janelle Steltzlen, a sixty-six year old lawyer who is not related to J.E.D. At the time of J.E.D.'s birth, her mother was living with Janelle Steltzlen's daughter, Christa Stelt-

zlen. The father was never contacted by the mother, the petitioner or Christa Steltzlen after the child was born, until a petition for co-guardianship was filed in 2004.

¶ 3 The mother and the respondent, Greggory Fritz, had a brief sexual relationship in March preceding the birth of J.E.D. while they both worked at a thrift store in Tulsa. Fritz testified that the mother told him that she had a boyfriend. Mother left her employment at the thrift store shortly after the end of the relationship with father. Father testified that she told him that she was entering a witness protection program. The father left the thrift store shortly thereafter, moved and took a new job.

¶ 4 Father ran into mother at the thrift store approximately seven months later when both were visiting there. Mother was pregnant and she and father talked about the pregnancy. Mother indicated that it was possible that he might be the father. Father offered to take a DNA test and mother declined. As a result of that conversation and because he never heard anything further, father testified that he did not believe that he was the father of the child. Father testified that if the child had been his he would have supported the mother during the pregnancy and birth, and would have assumed his parental responsibilities.

¶ 5 The father reunited with his girlfriend and they married in May, 2001. Shortly after mother became pregnant, she began living with Christa Steltzlen, the petitioner's daughter. They lived together for approximately two years and the mother essentially relinquished the care of J.E.D. to Christa Steltzlen and Christa's mother, the petitioner. In April of 2002, Christa moved her residence and shortly thereafter, J.E.D went to live with Christa. Since her birth, J.E.D. often stayed overnight at the petitioner's house and she stayed with petitioner for four or five months while Christa was incarcerated on drug charges.

1. Though the petition in error lists 18 issues, some with multiple sub-issues, the only issue in a 10 O.S. § 7505–4.2 hearing is the right to consent to adoption. *Matter of Adoption of J.R.M.,* 1995 OK 79, 899 P.2d 1155.

¶ 6 In early 2004, petitioner and her daughter Christa applied to be co-guardians of J.E.D. so that they could enroll her in child care and get her onto waiting lists for schools. Janelle Steltzlen testified that she asked J.E.D.'s mother who the father was, so that she could give him notice of the guardianship. Petitioner claims that this is the first she knew that respondent was the father.

¶ 7 Prior to filing the guardianship, Janelle Steltzlen contacted Greggory Fritz by telephone at work, telling him that she was required to give him notice of the guardianship because he was the child's father. Father testified that she told him that he did not need to attend the hearing. Respondent testified that this was the first time he learned that he was J.E.D.'s father. He immediately hired an attorney, filed a paternity action, attended the guardianship proceedings and began steps to recover his daughter. He appeared and objected to the guardianship, but was held to be without standing to object since he had no proof that he was the child's father.[2] At the guardianship hearing, the trial judge refused to appoint Christa Steltzlen as one of J.E.D.'s guardians, but appointed the petitioner, Janelle Steltzlen, as J.E.D.'s guardian.

¶ 8 DNA testing established that respondent was the father of J.E.D., and an order determining paternity was entered on May 25, 2004 by Judge Smith. Father immediately filed a motion to terminate the guardianship and to award custody to him. A public defender was appointed to represent the minor child, and a hearing date of June 28, 2004 was set to hear Respondent's motion to terminate the guardianship, as well as custody and visitation issues. That hearing before Judge Smith apparently was not held because the petitioner filed the petition to adopt J.E.D. on June 1, 2004, and all proceedings involving the child were transferred to Judge Morrissey on June 28, 2004 and consolidated.[3]

¶ 9 Shortly after filing the petition for adoption, petitioner filed an application to adopt without consent of the father.[4] Petitioner alleges that the father's consent is not required in this proceeding because several of the 10 O.S. § 7505–4.2 exceptions are present, including failure to support and failure to establish a parental relationship with J.E.D.

¶ 10 Father filed his objection to petition to adopt on June 17, 2004. He contends that he was unaware that he was the father of the child. He stated that subsequent to the relationship with Merriellen Davenport, he moved, married and started a new job. He argues that the mother either gave or abandoned the child to the possession and care of Christa Steltzlen and Janelle Stetzlen, who were unknown to him, and that they never sought to contact him or notify him that his daughter was in their possession. Respondent states that had if he had known that he was the father of the child he would have assumed his parental duties and testified that he supports a child from a previous marriage. He points out that as soon as he was told that J.E.D. was his, he immediately took all steps to assume his parental role and responsibility. He states that he wants to assume custody and control of J.E.D. and that he and his wife have the means, ability, intent and desire to raise the child.

2. On March 11, 2004 Mr. Fritz was served with a petition for appointment of Christa and Janelle Steltzlen as co-guardians of the person and estate of J.E.D. Mr. Fritz filed a petition to establish paternity on March 18, 2004. He also filed an Advice to the Guardianship Court that if DNA tests proved that he was the child's natural father, he intended to seek physical and legal custody of the child. Because DNA tests had not yet been confirmed, the trial judge held that he did not have standing to object to the appointment of Janelle Steltzlen as the guardian. The guardianship was then consolidated with the paternity case and reassigned to Judge Clifford Smith's paternity docket. On May 25, 2004, after paternity had been established, respondent filed a motion to terminate the guardianship and award custody to him.

3. The three consolidated proceedings are: FA 2004–167(Adoption), FD 2004–1109 (Paternity) and PG 1004–131 (Guardianship).

4. If consent to the adoption has not been obtained from both parents of the child, the petitioner must file an application to the court stating the reason that the consent of the parent is not necessary. 10 O.S. § 7505–4.1. Title 10 O.S. § 7505–4.2 sets out the exceptions to the requirement of parental consent.

¶ 11 Four days of hearings were held on the matter, with much controverted testimony. The trial judge denied the petitioner's application to allow adoption without consent of the father by order dated June 15, 2005. This appeal followed and petitioner's motion to retain was granted.

## DISCUSSION

¶ 12 The importance of the right to consent to an adoption has been recognized as an important right in and of itself. *Merrell v. Merrell,* 1985 OK 107, 712 P.2d 35. The law presumes that consent of a child's natural parents is necessary before an adoption may be effected. *In the Matter of the Adoption of C.D.M.,* 2001 OK 103, 39 P.3d 802, 807, cert. den. 535 U.S. 1054, 122 S.Ct. 1911, 152 L.Ed.2d 821. If consent to the adoption has not been obtained from both parents of a child, the petitioner must file an application to the court stating the reason that the consent of the parent is not necessary. 10 O.S. § 7505–4.1. Title 10 O.S. § 7505–4.2 sets out the exceptions to the requirement of parental consent.[5] The burden rests on the party who seeks to destroy the bond to show why consent may be dis-

**5.** § 7505–4.2 provides, in pertinent part:

A. Consent to adoption is not required from a putative father of a minor who, at the hearing provided for in Section 7505–2.1 or 7505–4.1 of this title, fails to prove he is the father of the child.

B. Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child or a petition to terminate parental rights pursuant to Section 7505–2.1 of this title, has willfully failed, refused, or neglected to contribute to the support of such minor:

1. In substantial compliance with an order entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support; or

2. According to such parent's financial ability to contribute to such minor's support if no provision for support is provided in an order. The incarceration of a parent in and of itself shall not prevent the adoption of a minor without consent.

C. Consent to adoption is not required from a father or putative father of a minor born out of wedlock if:

1. The minor is placed for adoption within ninety (90) days of birth, and the father or putative father fails to show he has exercised parental rights or duties towards the minor, including, but not limited to, failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy; or

2. The minor is placed for adoption within fourteen (14) months of birth, and the father or putative father fails to show that he has exercised parental rights or duties towards the minor, including, but not limited to, failure to contribute to the support of the minor to the extent of his financial ability, which may include consideration of his failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy. Failure to contribute to the support of the mother during her term of pregnancy shall not in and of itself be grounds for finding the minor eligible for adoption without such father's consent. The incarceration of a parent in and of itself shall not prevent the adoption of a minor without consent.

D. In any case where a father or putative father of a minor born out of wedlock claims that, prior to the receipt of notice of the hearing provided for in Sections 7505–2.1 and 7505–4.1 of this title, he had been specifically denied knowledge of the minor or denied the opportunity to exercise parental rights and duties toward the minor, such father or putative father must prove to the satisfaction of the court that he made sufficient attempts to discover if he had fathered a minor or made sufficient attempts to exercise parental rights and duties toward the minor prior to the receipt of notice.

G. Consent to adoption is not required from a parent who is entitled to custody of a minor and has abandoned the minor.

H. 1. Consent to adoption is not required from a parent who fails to establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child.

2. In any case where a parent of a minor claims that prior to the receipt of notice of the hearing provided for in Sections 7505–2.1 and 7505–4.1 of this title, such parent had been denied the opportunity to establish and/or maintain a substantial and positive relationship with the minor by the custodian of the minor, such parent shall prove to the satisfaction of the court that he or she has taken sufficient legal action to establish and/or maintain a substantial and positive relationship with the minor prior to the receipt of such notice.

3. For purposes of this subsection, "fails to establish and/or maintain a substantial and positive relationship" means the parent:

a. has not maintained frequent and regular contact with the minor through frequent and regular visitation or frequent and regular communication to or with the minor, or

b. has not exercised parental rights and responsibilities.

pensed with. *Matter of Adoption of C.M.G.*, 1982 OK 156, 656 P.2d 262. The standard of proof necessary to establish any of the grounds to permit adoption without consent, or for termination of parental rights is clear and convincing evidence. *In the Matter of Darren Todd. H.*, 1980 OK 119, 615 P.2d 287.

¶ 13 In this case, the Petitioner alleges that the respondent wilfully failed refused or neglected to contribute to the support of J.E.D. for a period of twelve consecutive months out of the fourteen months immediately preceding the filing of the petition to adopt, and that he failed to maintain a substantial and positive relationship with J.E.D. for a period of six consecutive months out of the fourteen months immediately preceding the filing of the petition to adopt.[6] Thus, petitioner argues, there is no "parental relationship" between the respondent and J.E.D.[7]

■ ¶ 14 Section 7505–4.2(D) contains a defense to termination on the grounds of non-support during pregnancy or after the birth of a child if the father can prove that he was specifically denied knowledge of the minor or denied the opportunity to exercise his parental rights and abilities. *Baby Boy W.*, 1999 OK 74, 988 P.2d 1270, 1273. To successfully utilize the defense, the father or putative father must prove that he made a sufficient attempt to discover if he fathered a child or to exercise parental rights and duties. *Id.*, 1273–74. The statute requires only that the father must prove *to the satisfaction of the court* that he has made suffi-

cient attempts to discover if he had fathered a minor.[8]

¶ 15 The trial judge in the case at bar held that the petitioner failed to meet the burden of proof necessary to establish that consent of the father was not required. The trial judge found that the petitioner failed to prove that the Respondent wilfully failed, refused or neglected to contribute to the support of such minor child or failed to establish or maintain a substantial and positive relationship with the child. The trial judge made a specific finding that the petitioner had concealed the child from the father. She ruled that a prospective adoptive party cannot claim the benefit of 10 O.S. § 7505–4.2 when that party has actively concealed the existence and/or location of the child from the parent, citing *In re Biological Parents of Baby Boy W.*, 1999 OK 74, 988 P.2d 1270. The trial judge found that the father had made a sufficient attempt to determine whether he was the father of the child by offering to take the DNA test.

¶ 16 It is not disputed that after the chance meeting at the thrift store, mother did nothing further to contact the father, to let him know that the child had been born or that he was the father of the child. Mother essentially turned the custody and care of J.E.D. over to the petitioner and her daughter. It is not disputed that neither the petitioner nor Christa Steltzlen, though they had assumed the care and responsibility for raising the child, attempted to contact the father until they sought to become J.E.D.'s guardians. In *In re Biological Parents of Baby Boy W,*

---

6. 10 O.S. § 7505–4.2(B) provides:
   "Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption ... has *wilfully* failed, refused or neglected to contribute to the support of such minor." (emphasis added)
   Title 10 O.S. § 7505–4.2(H) provides that consent to adoption is not required from a *parent* who fails to establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months of the last fourteen months immediately preceding the filing of a petition for adoption of the child. (emphasis added)

7. Petitioner also argued that this constituted "abandonment" within the meaning of 10 O.S.

§§ 7505–4.2(G). The trial court specifically ruled that 10 O.S. §§ 7505–4.2(G) did not apply because the father was not entitled to custody until paternity had been established.

8. 10 O.S. § 7505–4.2(D) provides that in any case where a father or putative father of a minor born out of wedlock claims that, prior to receipt of notice required by § 7505–2.1 and § 7505–4.1, he had been specifically denied knowledge of the minor *or* denied the opportunity to exercise parental rights and duties toward the minor, such father or putative father must prove to the satisfaction of the court that he made sufficient attempts to discover if he had fathered a minor *or* made sufficient attempts to exercise parental rights and duties to the minor prior to the receipt of notice. (emphasis added).

1999 OK 74, 988 P.2d 1270, we said that under the due process clause, the father had a right to notice of the fact that the mother was pregnant and had given birth to his child. The duty to inform the father rests initially with the mother, and later with the adoption agency, but both failed to inform him, despite the relative ease with which this could have been accomplished. 988 P.2d at 1274. We said that the adoption agency in that case was no less to blame than the mother in denying the father notice of the child's existence. *Id.* We affirmed the trial court's determination that the natural father did everything he reasonably could have done under the circumstances and that his conduct was sufficient considering that the natural mother failed to provide any information to him concerning her pregnancy. We held that the natural Mother's actions constituted specific denial of knowledge of the child and offered a complete defense to the termination of father's parental rights.

¶ 17 Petitioner relies primarily on two cases from the Court of Civil Appeals: *In the Matter of the Adoption of G.E.E.*, 1998 OK CIV APP 33, 956 P.2d 942, and *In the Matter of Adoption of Baby Girl M.*, 1997 OK CIV APP 33, 942 P.2d 235, both of which relied on a 1985 case of this Court: *Matter of Baby Boy D.*, 1985 OK 93, 742 P.2d 1059. When *Baby Boy D.* was decided the adoption code did not require the consent of the father of a child born out of wedlock.[9] *Baby Boy D.* dealt with the constitutional rights of a putative father of a child born out of wedlock to notice and an opportunity to be heard. In that case the mother had told the father that she was putting the child up for adoption and he did not object. 742 P.2d at 1061. The father took no action until after adoption proceedings had begun. Both cases of the Court of Civil Appeals affirmed the trial courts' rulings that the fathers had failed to seize their parental opportunity interest. Neither of those cases involved the father's allegation that he had been denied knowledge of the child or the opportunity to exercise his parental rights and duties.

■ ¶ 18 There was conflicting testimony in the case at bar. The trial judge, as the trier of fact, heard all of the testimony and observed all of the witnesses during four days of hearing. Credibility of witnesses and the effect and weight of conflicting or inconsistent testimony are questions of fact to be determined by the trier of fact, and are not questions of law for the court on appeal. *Estate of Gerard v. Gerard*, 1995 OK 144, 911 P.2d 266.

■ ¶ 19 The adoption code states among its purposes to affirm the duty of a male who has had sexual relations with a female outside of marriage to be aware that a pregnancy might occur and to inform himself about the existence of any such child.[10] The trial judge specifically found that the respondent had proved to the satisfaction of the court that he made sufficient attempts to discover if he had fathered a child by inquiring of the mother and asking her to cooperate in DNA testing, which mother declined. Lack of diligence alleged on the part of the father can also be ascribed to the mother. Father testified that mother had told him she was entering a witness protection program, and she refused his offer of a DNA test. The mother in the case at bar essentially turned the child over to the petitioner and her daughter, who never sought to contact the father until more than three years after the child's birth when they sought to establish a guardianship.

■ ¶ 20 In an action of equitable cognizance, there is a presumption in favor of the trial court's findings and they will not be set aside unless they are against the clear weight of the evidence. *Groseclose v. City of Tulsa*, 1998 OK 112, 990 P.2d 828. In a case of

---

9. 10 O.S.1981 § 60.6(A) provided that:
    "A legitimate child cannot be adopted without the consent of its parents, if living, nor a child born out of wedlock without consent of its mother, if living . . ."

10. 10 O.S. § 7501–1.2(5) states, among other purposes of the code, to "affirm the duty of a male person who has sexual relations with a female person outside of marriage to be aware

that a pregnancy might occur." 10 O.S. § 7501–1.2(6) affirms the duty of the biological father of a child who is to be born or who is born outside of marriage to exercise his parental responsibilities for the child, which includes the duty to inform himself about the existence and needs of any such child and to exercise parental responsibilities toward that child even before birth.

equitable cognizance, the Supreme Court presumes the district court's findings of fact are correct and will not disturb such findings on appeal unless they are clearly contrary to the weight of the evidence. *Pine Island RV Resort, Inc. v. Resort Management, Inc.,* 1996 OK 83, 922 P.2d 609 To reverse the trial court on grounds of abuse of discretion, it must be found that the trial court made clearly erroneous conclusions and judgment, against reason and judgment. *Oklahoma Turnpike Authority v. Asher,* 1993 OK 136, 863 P.2d 1205.

¶ 21 The trial judge concluded that the evidence in support of petitioner's application to adopt J.E.D. without consent of her father failed to reach the level of clear and convincing evidence. The trial judge, having heard all of the testimony and reviewing the evidence, merely determined that the petitioner failed to establish that the father's consent was not required. There is evidence to support the trial judge's ruling, and we cannot find that the decision constitutes an abuse of the trial judge's discretion.

<div align="center">

**AFFIRMED.**

¶ 22 **ALL JUSTICES CONCUR.**