264 P.3d 1258 (2011)
2011 OK 94
In the Matter of the ADOPTION OF BABY BOY K.B., a Minor Child.
M.B. and V.B., [Prospective] Adoptive Parents, and Baby Boy K.B., Appellants,
v.
T.R., Putative Father, Appellee.
No. 109,333.
Supreme Court of Oklahoma.
November 1, 2011.
*1259 Susan Meinders, Meinders & Meinders, PC, Woodward, Harvey D. Ellis, Crowe & Dunlevy, PC, Oklahoma City, Melanie W. Rughani, Crowe & Dunlevy, PC, Oklahoma City, for Appellants M.B. and V.B.
Carelyn S. Talley, Foard & Talley, PLLC, Woodward, for Appellant Baby Boy K.B.
Ryan Meacham, Randolph S. Meacham, PC, Clinton, Appellee T.R.
COLBERT, V.C.J.
¶ 1 The question presented is whether K.B. is eligible for adoptionmore specifically, whether K.B. is eligible for adoption without the consent of his biological father. This Court holds the trial court did not abuse its discretion by holding that K.B. is not eligible for adoption because K.B.'s biological father exercised his parental rights regarding K.B., including contributing to the support of the biological mother during pregnancy.

I. BACKGROUND AND PROCEDURAL HISTORY
¶ 2 T.R., Putative father[1] of K.B., and J.B., biological mother of K.B., had a physical relationship for several months despite the fact that J.B. was married to another man. J.B. and her husband were having marital problems during the course of her relationship with T.R. During the majority of the affair, J.B.'s husband was working out of town for months at a time. K.B. was born on July 11, 2010. It was determined by genetic testing that T.R. was the biological father of K.B.
*1260 ¶ 3 After K.B.'s birth, J.B. and her husband relinquished their parental rights and consented to K.B.'s adoption. J.B. selected M.B. and V.B. as the prospective adoptive parents. K.B. went home from the hospital with the prospective adoptive parents. Shortly after K.B. was born, T.R. saw J.B. at the local grocery store. It was then that he learned that J.B. had given birth and that K.B. was to be adopted. T.R. contacted an attorney and filed a motion for determination of paternity in Ellis County. T.R.'s paternity was established by genetic testing.
¶ 4 On October 21, 2010, the parties appeared before Judge VerSteeg and stipulated that T.R. was the natural father of K.B. The court then heard arguments regarding placement of K.B. with T.R. as the child's natural father. Judge VerSteeg denied T.R.'s request for custody at that time. The court did award T.R. visitation until the matter regarding the termination of his parental rights could be decided.
¶ 5 On March 24, 2011, a hearing regarding adoptive parents' motion to terminate the natural father's parental rights was held. At the conclusion of those proceedings the judge held that T.R. clearly exercised his paternal rights and that he made monetary contributions to the natural mother during her pregnancy. The court then found that T.R. was entitled to custody of K.B., but allowed M.B. and V.B. visitation until the next scheduled hearing. The record does not reflect that another hearing ever occurred.
¶ 6 In an order on April 4, 2011, the trial court denied the adoptive parents' petition for adoption. Adoptive parents appealed that decision and this Court granted their motion to retain.

II. STANDARD OF REVIEW
¶ 7 "An abuse of discretion occurs when a trial court exercises its discretion `to an end or purpose not justified by, and clearly against, reason and evidence. It is discretion employed on untenable grounds or for untenable reasons, or a discretionary act which is manifestly unreasonable.'" State v. Vaughn, 2000 OK 63, ¶ 8, 11 P.3d 211, 214 (quoting Patel v. OMH Med. Ctr., Inc., 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194). "In cases where abuse of discretion is raised, the discretionary act will be reviewed and if abuse is involved, the abuse will be corrected." Broadwater v. Courtney, 1991 OK 39, ¶ 7, 809 P.2d 1310, 1312.

III. ANALYSIS
¶ 8 "The importance of the right to consent to an adoption has been recognized as an important right in and of itself. The law presumes that consent of a child's natural parents is necessary before an adoption may be effected." Steltzlen v. Fritz, 2006 OK 20, ¶ 12, 134 P.3d 141, 144. Parents have a right to raise their own children. This right is fundamental and protected by the United States and Oklahoma constitutions. In re T.D., 2001 OK CIV APP 92, ¶ 14, 28 P.3d 1163, 1167 (citation omitted). However, the United States Supreme Court and this Court have found that the rights of an unwed parent can be different than the rights of parents that are married. See Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). If for any reason the child's parents are unable to raise and care for the child, adoption is a viable alternative. Parental consent is required in all adoptions. However, consent of only one parent and not the other is acceptable in certain situations. In In re Baby Boy W., 1999 OK 74, 988 P.2d 1270, neither the biological mother nor the adoption agency notified the biological father that he had a child. Instead, the biological mother made a false statement in the district court regarding the identity of the father and/or his whereabouts. Consequently, the biological father never had the opportunity to exercise his parental rights towards the child. The father did not find out he fathered a child until he was served by the adoption agency with notice of the hearing to terminate his parental rightsmore than five months after the baby's birth. The district court entered a judgment in favor of the biological father and the adoption agency appealed. This Court affirmed the trial court's judgment, finding that the father was not given proper notice and opportunity to exercise his parental rights.

*1261 A. A minor may be adopted when there has been filed written consent to adoption or a permanent relinquishment for adoption executed by:
....
2) One parent of the minor, alone, if:
a) the other parent is dead,
b) the parental rights of the other parent have been terminated, or
c) the consent of the other parent is otherwise not required pursuant to section 7505-4.2 of this title....
Okla. Stat. tit. 10, § 7503-2.1(A) (2001).
¶ 9 If the parents are not married, the rights and responsibilities of the biological father are not automatic. He must take certain actions under the statute to exercise his rights before he can seek protection of his rights under the law. "[T]he married father has legal rights as father from the outset, while the unmarried father does not have automatic rights as father, but must acquire such rights through his conduct." Adoption of Baby Girl M, 1997 OK CIV APP 33, ¶ 6, 942 P.2d 235, 239.
C. Consent to adoption is not required from a father or putative father of a minor born out of wedlock if:
1. The minor is placed for adoption within ninety (90) days of birth, and the father or putative father fails to show he has exercised parental rights or duties towards the minor, including, but not limited to, failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy....
Okla. Stat. tit. 10, § 7505-4.2(C)(1) (2001). How much support qualifies as "the extent of his financial ability" is "fact driven, to be determined by the trier of fact in the first instance, and affirmed by the appellate courts if not against the clear weight of the evidence." Baby Girl M., 1997 OK CIV APP 33, ¶ 9, 942 P.2d at 240.
¶ 10 As the parties seeking adoption without consent, M.B. and V.B. bear the burden of showing why consent is not needed. Steltzlen, 2006 OK 20, ¶ 12, 134 P.3d at 144. "The standard of proof necessary to establish any of the grounds to permit adoption without consent, or for termination of parental rights is clear and convincing evidence." Id. M.B. and V.B. failed to meet their burden of proof.
¶ 11 The record demonstrates that upon discovering K.B.'s birth, T.R. took steps to gain legal and physical custody of the baby. On July 15, 2010, T.R. saw J.B. in the local grocery store and noticed she was no longer pregnant. When he asked about the baby, J.B. informed him that she had given birth on July 11, 2010, and had given K.B. up for adoption. T.R. immediately contacted an attorney and filed a paternity action within a matter of days.
¶ 12 When the court awarded T.R. visitation, he seized every opportunity to spend time with his child.[2] The trial court found that T.R. manifested a clear intent and complete appreciation of his parental role, including the intent to exercise his role in his child's life.
¶ 13 The prospective adoptive parents argued that T.R. did not contribute to the support of the mother to the full extent of his financial abilities during her pregnancy. The trial court disagreed.
The clause in § [7505-4.2(C)(1)], "including, [but not limited to], failure to contribute to the support of the mother [of the child] to the extent of his financial ability during her term of pregnancy," must modify each preceding clause and therefore requires acknowledgment of paternity, legal action to establish same, or exercise of parental rights and duties be accompanied by support of the mother during pregnancy.
Baby Girl M., 1997 OK CIV APP 33, ¶ 13, 942 P.2d at 240. The record contains clear and convincing evidence that T.R. gave monetary support and exercised his parental rights by giving mother money while she was pregnant and filing a paternity action after K.B.'s birth. How much support is sufficient *1262 is a question of fact to be determined by the trier of fact. Id.

IV. CONCLUSION
¶ 14 K.B. is not eligible for adoption without the consent of his biological father. T.R. exercised his parental rights to his child showing that "he grasps [the] opportunity and accepts some measure of responsibility for the child's future." Lehr, 463 U.S. 248, 262, 103 S.Ct. 2985. Plus, he provided financial support to the biological mother during her pregnancy. The sufficiency of the support is a fact to be determined by the trial court. Steltzlen, 2006 OK 20, ¶ 18, 134 P.3d at 146. T.R.'s parental rights remain intact. The record shows that the trial court set a best interest hearing pursuant to Title 10, section 7505-6.4, for April 21, 2011, but that hearing never occurred. This cause is remanded to the trial court for a hearing, as required by statute.[3]
AFFIRMED and REMANDED TO TRIAL COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
ALL JUSTICES CONCUR.
NOTES
[1] As used in the Oklahoma Adoption code:

"Putative father" means the father of a minor born out of wedlock or a minor whose mother was married to another person at the time of the birth of the minor or within the ten (10) months prior to the birth of the minor and includes, but is not limited to, a man who has acknowledged or claims paternity of a minor, a man named by the mother of the minor to be the father of the minor, or any man who is alleged to have engaged in sexual intercourse with a woman during a possible time of conception.
Okla Stat. tit. 10, § 7501-1.3(12) (Supp.2002).
[2] The record shows T.R. showed up every visitation day to pick up the baby, except for one day. On that occasion the baby was ill. All parties believed it to be in the child's best interest to forgo the visit and permit K.B. to stay at M.B. and V.B.'s home.
[3] The relevant statute provides:

A. If the court denies a petition for adoption or vacates a decree of adoption, it shall dismiss the proceeding. If no preexisting custody order remains in effect, the court shall issue an appropriate order for the legal and physical custody of the minor according to the best interests of the minor, if the court has jurisdiction to issue a custody order.
B. 1. If the court has jurisdiction to issue a custody order, the court shall schedule a separate hearing to determine custody of the minor. The court shall certify that the petitioner for adoption and each parent of the minor has received notice of the date of the custody hearing at least fifteen (15) days prior to the date of the hearing and that each biological parent who has signed a consent or permanent relinquishment has been served in the same manner as summons is served in civil cases at least fifteen (15) days prior to the date of the hearing. The petitioner for adoption shall be responsible for serving any parent who has not entered an appearance in the adoption proceeding. If the Department of Human Services or any licensed child-placing agency had legal custody at the time the petition was filed, the petitioner shall notify the Department or agency of the date of the custody hearing.
2. Upon motion to intervene, the court shall join any person entitled to notice under this subsection who is not already a party to the proceeding.
3. At the hearing, the court may award custody to the biological mother, the biological father, the biological parents, if they are married, the prospective adoptive parents, or the Department or other licensed child-placing agency if the Department or agency had legal custody of the child at the time that the petition was filed, pursuant to Section 21.1 of this title, in the best interests of the child.
4. The child shall be represented at this hearing pursuant to Section 7505-1.2 of this title.
Okla. Stat. tit. 10, § 7505-6.4 (2001).