OSCN Found Document:IN THE MATTER OF THE ADOPTION OF A.J.B.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 IN THE MATTER OF THE ADOPTION OF A.J.B.
2023 OK 122
Case Number: 120431
Decided: 12/19/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 122, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

IN THE MATTER OF THE ADOPTION OF A.J.B., a minor child:

WILLIAM E. BARNES and HANNAH A. BARNES, husband and wife, Appellants,
v.
ZACHARY WAYNE BARBEE, Appellee.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION IV

¶0 This is an action by the mother of a child born out of wedlock and her husband to adopt the child without the consent of the natural father. The trial court denied the adoption without consent holding the petitioners' evidence was insufficient. The Oklahoma Court of Civil Appeals vacated the judgment but agreed with the trial court that there was no clear and convincing evidence father willfully failed to support the child. The matter was remanded for an evidentiary hearing on the father's defenses to allegations he failed to maintain a relationship with the child. The father petitioned this Court for certiorari which was previously granted.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS
OPINION VACATED; TRIAL COURT JUDGMENT AFFIRMED

Jeremy S. Elliot, Jeremy S. Elliot, Inc., Durant, Oklahoma for Appellants

D. Michael Haggerty, II, Haggerty Law Office, Madill, Oklahoma for Appellee

OPINION

COMBS, J.:

¶1 The dispositive issue before us is whether the trial court abused its discretion in determining there was insufficient evidence to grant an adoption without consent of the natural father on the allegation he failed to establish or maintain a relationship with his child. We hold the trial court did not abuse its discretion.

I. BACKGROUND AND PROCEDURAL HISTORY

¶2 The appellant, Hannah A. Barnes (Barnes) and the appellee, Zachary Wayne Barbee (Barbee) produced a child out of wedlock (A.J.B.) who was born in September 2018 in the State of Texas. The couple split apart in May 2019 and Barnes moved to Durant, Oklahoma taking A.J.B. with her. In November 2019, Barnes brought A.J.B. to Texas to visit Barbee. The encounter ended with an argument, and it was the last time Barbee saw A.J.B. In February 2020, Barbee turned himself in to authorities on a controlled substance-related charge. He was incarcerated in Texas from February 14, 2020, to September 3, 2021.

¶3 In October 2020, Hannah married William E. Barnes (appellants). On February 8, 2021, while Barbee was incarcerated, the couple filed a Petition and an Application for Order Determining Child Eligible for Adoption Without Consent of Natural Father. The Application alleged Barbee had failed to contribute to the support of A.J.B. in excess of one year and maintain a substantial relationship with A.J.B. for at least 12 months and therefore his consent to their adoption of A.J.B. was unnecessary. Barbee received service on March 9, 2021, while incarcerated, and filed an answer/letter dated March 10, 2021, which was filed in the case on March 15, 2021. His answer/letter contested the proceedings and informed the court he would be released soon and upon his release he would be able to do all that was needed to support his daughter. On April 7, 2021, the trial court held that Barbee was indigent and appointed Michael Haggerty, II, to represent him in this matter.

¶4 On April 25, 2022, a hearing was held on the appellants' Application. The appellants' attorney called only two witnesses, Hannah A. Barnes and Zachary Wayne Barbee. Barbee's attorney called no witnesses but cross-examined appellants' witnesses. Barnes testified that she had notified Barbee by phone that she had moved to Durant, Oklahoma in October 2019 and the November 2019 meeting occurred after Barbee contacted her on social media. She testified that she had never given Barbee her home address and after the November 2019 meeting she blocked him on her phone as well as social media so he could not contact her. She further testified that Barbee had no other way to contact her. Her reasoning for blocking him was that she was afraid of Barbee. Barnes claimed to have sought child support from Barbee through the Oklahoma Child Support Enforcement Division and she claimed she informed Barbee of this in October 2019. However, no case number or documents were presented to support this allegation, and Barbee testified he had never been served with any child support papers. The only documents he was served concerned the present action while he was incarcerated and there was no difficulty quickly serving him those documents as seen by the record.

¶5 Barbee testified he did not know of any child support proceedings in Oklahoma and was never served any documents related to such proceedings. He first testified that he only learned Barnes had moved to Oklahoma when he was served the documents related to the present case. However, his testimony later changed:

Q: Did you try to contact Ms. Barnes between November [2019] and February [2020]?
....
Q: Okay. So you knew she was in Oklahoma, at that time?
A: At that time, yes.
Q: Okay. Did you know she was in Durant?
A: I didn't know that -- yes, sir, I knew. I knew -- I wasn't aware that she'd fully moved, until.
Q: But you were aware she was in Durant?
A: Yes, sir.

(April 25, 2022 hearing: Tr. 28, 1-2; Tr. 29, 4-10).

Barbee was asked if he had tried to provide child support to A.J.B. either through Texas or Oklahoma. He claimed he had contacted the Henderson County, Texas court clerk but he didn't have necessary information, such as a social security number, and never filed anything formally. He did testify that following his incarceration he has been employed as an iron worker and more than willing to begin paying child support. His testimony reflects he had not seen A.J. B. since the November 2019 meeting and had not provided support; he did not know an address where to send any payments for support and did not have a way to contact A.J.B. He further testified that even if he had a phone number he would not have been able to call A.J.B. while incarcerated.

¶6 After appellants rested their case, Barbee's attorney offered a demurrer to the evidence arguing the evidence presented was insufficient to support an adoption without the consent of the natural father. Barbee's attorney did not present any additional evidence or a case in chief and after all closing arguments and all evidence had been presented the trial court ruled on the demurrer. The trial court sustained the demurrer and denied the adoption without the consent of the natural father. A Journal Entry of Judgment was filed on April 28, 2022. The judgment provided the "Petitioner's evidence is insufficient to sustain their Application for adoption without consent" and was therefore denied. The Petition for adoption was also denied.

¶7 The appellants filed a Petition in Error on May 18, 2022. The Oklahoma Court of Civil Appeals (COCA) issued an unpublished opinion on June 2, 2023. It agreed with the trial court's ruling that there was insufficient evidence that Barbee "willfully" failed to support A.J.B. during the requisite period. However, the court found the appellants had established a prima facie case that Barbee did not maintain a substantial and positive relationship with A.J.B. during such period. It vacated the judgment and remanded the matter to the trial court to allow Barbee an opportunity to "put on any evidence he may have in defense" on this issue. Judge Wiseman concurred in part and dissented in part. She found the majority's position was too stringent, "particularly when a parent's constitutional rights are at stake." She believed Barnes had "undercut" Barbee's relationship with A.J.B. while he was incarcerated and the trial court's decision was not contrary to the clear weight of the evidence. On June 22, 2023, Barbee filed a Petition for Certiorari with this Court which was granted on October 9, 2023. Barbee challenges the court's holding that the appellants had established a prima facie case he did not maintain a substantial and positive relationship with A.J.B. and the holding departed from existing precedent of this Court.

II. STANDARD OF REVIEW

¶8 This Court has repeatedly recognized the right of a parent to the care, custody, companionship and management of his or her child is a fundamental right protected by the state and federal constitutions. Matter of Adoption of M.A.S., 2018 OK 1, ¶10, 419 P.3d 204, 208; In re Adoption of D.T.H., 1980 OK 119, ¶18, 615 P.2d 287, 290 (overruled on other grounds). The law presumes that both biological parents must consent before an adoption of their minor child may be effectuated. Matter of Adoption of M.A.S., 2018 OK 1, ¶10, 419 P.3d 204, 208. Adoption statutes in derogation of a biological parent's rights must be strictly construed in favor of the biological parent. Id. ¶11, at 208; Matter of Adoption of C.M.G., 1982 OK 156, ¶9, 656 P.2d 262, 265 ("Adoption statutes are in derogation of the natural rights of parents. They must be strictly construed."). The termination of such fundamental right calls for an application of the full panoply of procedural safeguards. Matter of Adoption of C.M.G., 1982 OK 156, ¶9, 656 P.2d at 265. The burden rests on the party seeking to destroy the parental bond to show why consent may be dispensed with. Id.

¶9 The standard of proof necessary to establish any of the grounds to permit adoption without consent, or for termination of parental rights, is clear and convincing evidence. Steltzlen v. Fritz., 2006 OK 20, ¶12, 134 P.3d 141, 145. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established. Matter of Adoption of M.A.S., 2018 OK 1, ¶11, 419 P.3d 204, 208. Actions of equitable cognizance, where the trial court weighs the evidence and sustains the demurrer and enters judgment for the defendant, will not be disturbed on appeal unless clearly against the weight of the evidence. Looney v. Bruin Oil Corp., 1942 OK 67, ¶1, 122 P.2d 1007, 1008. In an action of equitable cognizance, the Supreme Court presumes the trial court's findings of fact are correct and will not disturb such findings on appeal unless they are clearly contrary to the weight of the evidence. Steltzlen, 2006 OK 20, ¶20, at 146-47, citing Pine Island RV Resort, Inc., v. Resort Management, Inc., 1996 OK 83, ¶18, 922 P.2d 609, 613. To reverse on the grounds of abuse of discretion, it must be found that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence. Oklahoma Turnpike Auth. v. Asher, 1993 OK 136, ¶7, 863 P.2d 1205, 1207.

III. ANALYSIS

¶10 Title 10 O.S. § 7505-4.2 provides exceptions to the requirement that a parent must consent to an adoption. Subsection B provides:

B. Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child or a petition to terminate parental rights pursuant to Section 7505-2.1 of this title, has willfully failed, refused, or neglected to contribute to the support of such minor:

1. In substantial compliance with an order entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support; or

2. According to such parent's financial ability to contribute to such minor's support if no provision for support is provided in an order. For the purposes of this section, support for the minor shall benefit the minor by providing a necessity. Payments that shall not be considered support shall include, but are not limited to:

a. genetic and drug testing,

b. supervised visitation,

c. counseling for any person other than the minor,

d. court fees and costs,

e. restitution payments, and

f. transportation costs for any person other than the minor, unless such transportation expenses are specifically ordered in lieu of support in a court order.

The incarceration of a parent in and of itself shall not prevent the adoption of a minor without consent.

In addition, subsection H provides:

H. 1. Consent to adoption is not required from a parent who fails to establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child.

2. In any case where a parent of a minor claims that prior to the receipt of notice of the hearing provided for in Sections 7505-2.1 and 7505-4.1 of this title, such parent had been denied the opportunity to establish and/or maintain a substantial and positive relationship with the minor by the custodian of the minor, such parent shall prove to the satisfaction of the court that he or she has taken sufficient legal action to establish and/or maintain a substantial and positive relationship with the minor prior to the receipt of such notice.

3. For purposes of this subsection, "fails to establish and/or maintain a substantial and positive relationship" means the parent:

a. has not maintained frequent and regular contact with the minor through frequent and regular visitation or frequent and regular communication to or with the minor, or

b. has not exercised parental rights and responsibilities.

The appellants have alleged that Barbee failed to provide for A.J.B. and maintain the required relationship with her during the relevant period provided in subsections B and H, i.e., during the twelve (12) consecutive months out of the last fourteen (14) months immediately preceding their filing of their petition for adoption. The petition for adoption was filed on February 8, 2021, therefore, the relevant period would be from December 8, 2019, through February 8, 2021.

¶11 As to the subsection B grounds for adoption without consent, COCA agreed with the trial court that there was not clear and convincing evidence that Barbee had "willfully" failed to provide support for A.J.B. during this period. Barbee is the one who filed the Petition for Certiorari and does not contest COCA's ruling on this matter. The appellees did not file a Petition for Certiorari and therefore the trial court's ruling on these grounds is affirmed.

¶12 COCA, however, found that subsection H does not contain a "willful" requirement and there was clear and convincing evidence that Barbee had no contact with A.J.B. during the requisite statutory period. It found that by granting a demurrer to the evidence the proceedings before the trial court did not go beyond the question as to whether the appellants established a prima facie case that A.J.B was potentially eligible for adoption without consent pursuant to subsection H. It held that the appellants established a prima facie case that A.J.B. was statutorily eligible for adoption without consent. It vacated the trial court's order and remanded the matter to afford Barbee a chance to put on any evidence of a defense as to the subsection H grounds for adoption without consent. Judge Wiseman dissented. She found that Barnes' efforts to undercut Barbee's established relationship with A.J.B. while he was incarcerated in another state made the likelihood of his pursuing any requisite legal action all but non-existent. She found the ruling too stringent and narrow when considering a parent's constitutional rights were at stake.

¶13 Prior to its 2001 amendment, 10 O.S. § 7505-4.2 (H) provided:

H. Consent to adoption is not required from a parent who willfully fails to maintain a significant relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child.

This subsection was amended by H.B. 1670 in 2001 and removed the "willfully" language, among other things, and made other amendments in line with the present version. See 2001 Okla. Sess. Laws c. 434, § 8, emerg. eff. June 8, 2001. COCA focused on this amendment by acknowledging, that unlike subsection B of 10 O.S. § 7505-4.2, subsection H did not have this "willfully" language. However, a decision of this Court some five years after this amendment did not dwell upon that distinction. Barbee asserts in his Petition for Certiorari that COCA erred by not following precedent of this Court; namely, our decision in Steltzlen v. Fritz, 2006 OK 20, 134 P.3d 141. COCA did not address Steltzlen in its opinion even though Barbee had briefed the case.

¶14 In Steltzlen v. Fritz, 2006 OK 20, 134 P.3d 141, the father (Fritz) had a brief sexual encounter with a co-worker. The mother told Fritz that she had a boyfriend and soon thereafter she left her employment. She also told Fritz she was entering a witness protection program. Seven months later the two ran into each other and the mother was pregnant. The two talked about the pregnancy and the mother indicated it was possible that he was the father of the child (J.E.D.). Fritz offered to take a DNA test but the mother declined and he did not hear from the mother after that encounter. He assumed that he was not the father. The mother moved in with a friend and relinquished the care of J.E.D. to the friend and the friend's mother (Steltzlen). Over three years after the birth of J.E.D. the friend and Steltzlen filed a guardianship action and notified Fritz. Fritz testified this was the first time he learned he was the father. He immediately filed a paternity action and objected to the guardianship proceedings. The trial judge found there was no proof he was the father of J.E.D. and appointed Steltzlen as guardian.

¶15 Later, after a DNA test determined Fritz was the father of J.E.D., he moved to terminate the guardianship. Pending the motion, Steltzlen filed a petition for adoption and an application to adopt without the consent of the natural father. Steltzlen alleged Fritz failed to contribute to the support of J.E.D. for a period of twelve consecutive months out of the fourteen months immediately preceding the filing of the petition for adoption, and that he failed to maintain a substantial and positive relationship with J.E.D. for a period of six consecutive months out of the fourteen months immediately preceding the filing of the petition for adoption. The trial court denied the petition and application. It held Steltzlen had failed to meet the burden of proof necessary to establish Fritz's consent was not required. The trial court relied heavily on the fact that the mother had concealed the child. It specifically found "a prospective adoptive party cannot claim the benefit of 10 O.S. § 7505-4.2 when that party has actively concealed the existence and/or location of the child from the parent." Steltzlen, 2006 OK 20, ¶15, at 145.

¶16 On appeal, this Court unanimously affirmed the trial court's decision. We noted that in a similar case the mother's actions constituted a specific denial of knowledge of the child and such actions offered a complete defense to the termination of the natural father's parental rights. Id. ¶16, at 146; In re Termination of the Parental Rights of the Biological Parents of Baby Boy W., 1999 OK 74, ¶15, 988 P.2d 1270, 1274. In In re Termination of the Parental Rights of the Biological Parents of Baby Boy W., we determined a natural father did all he could reasonably have done under the circumstances and his conduct was sufficient where the natural mother failed to provide any information to the father concerning her pregnancy, and initially hid the father's identity from the court and adoption agency. In re Termination of the Parental Rights of the Biological Parents of Baby Boy W., 1999 OK 74, ¶15, at 1274. Our inquiry in Steltzlen was to determine whether the trial court abused its discretion. We noted there is a presumption in favor of the trial court's findings in an action of equitable cognizance and we would not disturb such findings unless they are clearly contrary to the weight of the evidence. Steltzlen, 2006 OK 20, ¶20, at 146-147. We held there was evidence to support the trial court's ruling and we could not find that the decision constituted an abuse of the trial judge's discretion. Id. ¶21, at 147.

¶17 Unlike Steltzlen and In re Termination of the Parental Rights of the Biological Parents of Baby Boy W., Barbee knew of the birth of A.J.B. and it appears from the record that Barnes and Barbee were a couple from her birth in September 2018 until they ended their relationship in May 2019. Barbee last saw A.J.B. in November 2019 and for twelve of the fourteen months prior to the filing of the petition and application, Barbee was incarcerated. Title 10 O.S. § 7505-4.2 (H) (2) provides that if a parent denies the opportunity to establish and/or maintain a substantial and positive relationship with the minor, the offended parent shall prove to the satisfaction of the court that he or she has taken sufficient legal action to establish such a relationship. In In re Termination of the Parental Rights of the Biological Parents of Baby Boy W., we noted that the United States Supreme Court has held that only "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'coming forward to participate in the rearing of his child' [does] his interest in personal contact with his child acquire substantial protection under the due process clause." In re Termination of the Parental Rights of the Biological Parents of Baby Boy W., 1999 OK 74, ¶10, at 1272, quoting Lehr v. Robertson, 463 U.S. 248, 261-62 (1983). There is no proof here that Barbee took any legal action to establish a relationship with A.J.B. during the statutory period prior to the filing of the petition and application. However, that fact alone should not be viewed in a vacuum. Adoption statutes in derogation of a biological parent's rights must be strictly construed in favor of the biological parent. Matter of Adoption of M.A.S., 2018 OK 1, ¶11, 419 P.3d 204, 208. The decision of the trial court in Steltzlen which forbid the termination of parental rights when the existence and/or location of the child had been concealed by the moving parent, is consistent with this principle.

IV. CONCLUSION

¶18 Here, Barnes would not give Barbee her address. She blocked him on her phone and social media. Although his testimony was at times contradictory, it appears Barbee thought Barnes and A.J.B. were living somewhere in Durant, Oklahoma. That was all the information he had. Barnes intentionally concealed A.J.B.'s whereabouts from Barbee. The trial court made no specific finding as to the sufficiency of Barbee's legal efforts to establish a relationship with A.J.B. However, after hearing all the testimony and reviewing the evidence, it held the evidence was insufficient to sustain the petition for adoption and application for adoption without consent. We hold there was evidence to support the trial judge's ruling. His decision was not a clearly erroneous conclusion and judgment, against reason and evidence. Therefore, we do not find the ruling constitutes an abuse of discretion.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT JUDGMENT AFFIRMED

Kauger, Winchester, Edmondson, Combs, Gurich, Darby (by separate writing), and Kuehn, JJ., concur;

Kane, C.J., and Rowe, V.C.J., dissent.

 

 

Darby, J., concurring specially:

¶1 I concur in the Opinion of the Court vacating the Court of Appeals Opinion and affirming the Trial Court Judgment. I do, however, want to address the wording used to describe what happened procedurally before the trial court. Barbee, the biological father, testified in Appellant's case in chief. On cross-examination the Trial Court allowed Barbee to testify to topics beyond the scope of direct. This allowed Barbee to in effect put on his case and his evidence during Applicant's case in chief.

¶2 When Appellants rested their case on the evidence presented, Barbee put on no additional evidence. The Trial Court orally announced that he was sustaining Barbee's demurrer to Appellants' evidence. But the Trial Court's written Journal Entry of Judgment filed April 28, 2022, contains no mention of a demurrer. The written Judgment only reflects that "Petitioners' (Appellants') evidence is insufficient to sustain their Application for adoption without consent, and so the Application should be and hereby is denied."

¶3 This distinction in wording is preferable because Barbee in fact presented his case, albeit before Appellants rested. Because this trial was before the court and not a jury the less accurate wording is harmless.

¶4 I concur specially in the Court's opinion.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1993 OK 136, 863 P.2d 1205, 64 OBJ 3286, 
Oklahoma Turnpike Authority v. Asher
Discussed

 
2006 OK 20, 134 P.3d 141, 
STELTZLEN v. FRITZ
Discussed at Length

 
1996 OK 83, 922 P.2d 609, 67 OBJ 2332, 
Pine Island RV Resort, Inc. v. Resort Management, Inc.
Discussed

 
1980 OK 119, 615 P.2d 287, 
Adoption of Darren Todd H., Matter of
Discussed

 
2018 OK 1, 419 P.3d 204, 
IN THE MATTER OF THE ADOPTION OF M.A.S.
Discussed at Length

 
1982 OK 156, 656 P.2d 262, 
Adoption of C.M.G., Matter of
Discussed at Length

 
1999 OK 74, 988 P.2d 1270, 70 OBJ 2677, 
In re Termination of the Parental Rights of the Biological Parents of Baby Boy W.
Discussed at Length

 
1942 OK 67, 122 P.2d 1007, 190 Okla. 266, 
LOONEY v. BRUIN OIL CORP.
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA