OSCN Found Document:IN RE ADOPTION OF K.P.M.A.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN RE ADOPTION OF K.P.M.A.
2014 OK 85
Case Number: 111905
Decided: 10/14/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 85, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN RE ADOPTION OF K.P.M.A.:

MARSHALL LEE ANDREWS and TONI MICHELLE ANDREWS, Petitioners/Appellees,
v.
BILLY McCALL, Respondent/Appellant.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION III, ON
APPEAL FROM THE DISTRICT COURT OF ROGERS COUNTY, STATE
OF OKLAHOMA, HONORABLE ERIN L. OQUIN

¶0 Natural father of minor child K.P.M.A. sought review of the trial court's termination of his parental rights on the grounds provided within 10 O.S. 2011 § 7505-4.2. The Court of Civil Appeals, Division III, affirmed. This Court granted certiorari and determines that termination of the natural father's parental rights was improper because the natural father's due process rights were violated and the termination of the natural father's parental rights was not supported by clear and convincing evidence.

COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF THE
TRIAL COURT IS REVERSED; CAUSE REMANDED FOR 
PROCEEDINGS CONSISTENT WITH THIS OPINION

Rebecca A. Murphy and David G. Francy, Patterson Law Firm, Tulsa, OK, for Petitioners/Appellees.
Gregory J. Denney, Gregory J. Denney & Associates, P.C., Tulsa, OK, for Respondent/Appellant.

COMBS, J:

¶1 This cause concerns the termination of parental rights of Respondent/Appellant Billy McCall (Father) to the minor child K.P.M.A. (Child). Child was born out-of-wedlock to T.Z. (Mother) on June 21, 2012. Prospective adoptive parents, Petitioners/Appellees Marshall Lee Andrews and Toni Michelle Andrews (Appellees), have had physical custody of the child since she was released from the hospital after birth. The questions presented are: 1) whether Father's due process rights were violated; 2) whether Father received ineffective assistance of counsel during the termination proceedings; and 3) whether the trial court's determination was supported by clear and convincing evidence.

I.

FACTS AND PROCEDURAL HISTORY

¶2 Appellees filed a Petition for Termination of Parental Rights of Natural Parents on June 27, 2012, and a Petition for Adoption on August 14, 2012. Mother voluntarily relinquished her parental rights on August 14, 2012, and is not a party to this appeal. Mother named Father as the putative father[1] of the child, and notice was sent to Father pursuant to 10 O.S. 2011 § 7505-4.1(C). Father filed a Response to Petition for Adoption and Petition for Termination of Natural Father in which he: 1) claimed paternity of the child; 2) stated he first learned of Mother's pregnancy and the birth of the child when he was served a summons in a guardianship proceeding for the child in Rogers County, Oklahoma (PG-2012-51); and 3) claimed he visited the child for several months after birth and also contributed support money for the child to Appellants in the amount of $250.00 per month after the child's birth.

¶3 The trial court held a hearing on the motion to terminate Father's parental rights on May 22, 2013. The record indicates that Mother and Father met on July 4, 2011, and engaged in sexual intercourse several times over the following months, beginning in August of 2011. Father testified that though they were friends, they were never in a romantic relationship. The record indicates that the last sexual encounter between Father and Mother occurred sometime in either September or October of 2011, and Father testified that he made no attempt to contact mother after that event.

¶4 The only apparent meeting between Father and Mother between their last sexual encounter and the birth of the child occurred in December of 2011, when Mother allegedly came to Father's workplace to see him. Mother did not mention pregnancy or the possibility of pregnancy and Father also did not enquire as to whether Mother was or might be pregnant.

¶5 It is evident from the record that at some point prior to the birth of the child Mother sent Father a message via Facebook informing him that she was pregnant and planning to give the child up for adoption. What is not clear from the record is exactly when Father received this message. Father testified that at some point in July of 2012 he attempted to contact Mother by Facebook, and in the process of doing so noticed for the first time the message Mother sent informing him of her pregnancy. Father testified he did not know how old the message was when he read it. Father later testified during cross examination that he first found out about the child's existence seven days after birth, June 21, 2012.

¶6 The trial court refused to allow any testimony from Father concerning his participation in guardianship proceedings concerning the child. Relying in part on this Court's decision in Steltzlen v. Fritz, 2006 OK 20, 134 P.3d 141, the trial court determined that when Father actually found out about the pregnancy and birth of the child was irrelevant, as the burden was on Father to determine if he might have fathered a child and to exercise his parental rights pursuant to 10 O.S. 2011 § 7505-4.2(C). At the conclusion of Father's testimony, Mother moved for a directed verdict to terminate Father's parental rights. Father did not object or respond to the motion. The trial court sustained the motion for a directed verdict.

¶7 Father retained new appellate counsel and filed a Petition in Error on June 24, 2013. Father included with his Petition in Error a signed and certified order of the trial court terminating his parental rights that was filed on June 21, 2013. This order does not appear elsewhere in the record and Appellees assert the order was never sent to the parties and that proof of service was requested but never provided. Appellees assert that because Father's order was never provided to the other parties, a second order was drafted and circulated among the parties that attended the termination hearing, was signed and then filed on August 5, 2013. This order is also not included anywhere in the record on appeal. Appellees further claim they received no notice of the appeal until January 13, 2014, after this Court issued an order determining that Appellees' answer brief had not been timely filed pursuant to Oklahoma Supreme Court Rule 1.10(c)(3). Appellees filed their answer brief on January 21, 2014, but objected to their lack of notice.[2]

¶8 On appeal, Father asserted several errors including improper notice and ineffective assistance of counsel. Father also challenged the trial court's decision to limit his testimony concerning his attempts to exercise parental rights prior to service of the adoption proceedings. In an unpublished opinion filed on April 11, 2014, the Court of Civil Appeals affirmed the trial court's termination of Father's parental rights. The Court of Civil Appeals determined that Father waived his right to challenge the validity of service of process by reserving an additional twenty (20) days in which to answer pursuant to 12 O.S. 2011 §2012(A)(1)(b). The Court also determined that the application to terminate Father's parental rights was sufficient to put Father on notice of the grounds for termination.

¶9 The Court of Civil Appeals agreed with the trial court's reasoning that Father's actions after the birth of the child were irrelevant, as Father's testimony showed that mother informed him of the pregnancy and plans for adoption while she was still pregnant and Father did nothing. The Court of Civil Appeals apparently took for granted that Mother's attempt to contact Father via Facebook constituted informing Father, and appears to ignore the fact that Father had asserted since the start of these proceedings that he did not see the message and did not know he had fathered a child until after the birth. The Court of Civil Appeals determined:

Mother specifically informed Father she was pregnant at some point later during the course of her pregnancy, clearly triggering Father's obligation to provide support. Father simply failed to act on that information as the statute requires of a putative father intent on protecting his parental rights.

Unpublished Opinion of the Oklahoma Court of Civil Appeals, Division III, ¶14 (April 11, 2014).

¶10 The Court of Civil Appeals also rejected Father's ineffective assistance of counsel argument. The Court of Civil Appeals determined that Father was required to show both the attorney's performance was deficient and that it prejudiced his case, and at the very least Father failed to meet the latter requirement, as Father's own testimony was that Mother informed him of the pregnancy while she was pregnant and his own testimony confirmed he failed to assert his parental rights by contributing to Mother's support as required by 10 O.S. 2011 § 7505-4.2(C)(1).

¶11 Father filed a Petition for Certiorari on May 1, 2014, asserting that the Court of Civil Appeals erred by wrongly construing the evidence to read that Father knew of the pregnancy before birth, simply because Mother allegedly notified him of it by Facebook. Further, father also argues his procedural due process rights protected by U.S. Const. amend. XIV, § 1; Okla. Const., art. 2, §7 have been violated because the statutes place the burden of discovering the pregnancy on Father, and he was not allowed the opportunity to present evidence regarding steps he took to protect his parental rights after he learned of the child's existence. Finally, Father reasserts that he received ineffective assistance of counsel. This Court granted Father's Petition for Certiorari on June 30, 2014, and the cause was assigned to this office on July 1, 2014.

II.

STANDARDS OF REVIEW

¶12 Whether an individual's procedural due process rights have been violated is a question of constitutional fact which this Court reviews de novo. Pierce v. State ex rel. Dept. of Public Safety, 2014 OK 37, ¶7, 327 P.3d 530; In re A.M. & R.W., 2000 OK 82, ¶6, 13 P.3d 484. De novo review requires an independent, non-deferential re-examination of another tribunal's legal rulings. Pierce, 2014 OK 37, ¶7; In re A.M., 2000 OK 82, ¶6; Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, n. 1, 932 P.2d 1100.

¶13 In examining whether there is sufficient evidence to support an order terminating parental rights, this Court will review the record for clear and convincing evidence in support of the decision to terminate. In re C.D.P.F., 2010 OK 81, ¶6, 243 P.3d 21; In re S.B.C., 2002 OK 83, ¶¶5-7, 64 P.3d 1080. This Court must canvass the record to determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. In re C.D.P.F., 2010 OK 81, ¶6; In re S.B.C., 2002 OK 83, ¶6. Our appellate review does not require a re-weighing of the evidence presented at trial. In re C.D.P.F., 2010 OK 81, ¶6.

III.

ANALYSIS

¶14 Proceedings to terminate parental rights incident to adoption are governed by the Oklahoma Adoption Code, found within 10 O.S. §7501-1.1 et seq. Title 10 O.S. 2011 § 7503-2.1 governs who may consent to the adoption of a minor child and provides in pertinent part:

A. A minor may be adopted when there has been filed written consent to adoption or a permanent relinquishment for adoption executed by:

1. Both parents of the minor;

2. One parent of the minor, alone, if:

a. the other parent is dead,

b. the parental rights of the other parent have been terminated, or

c. the consent of the other parent is otherwise not required pursuant to Section 7505-4.2 of this title;

The requirements for preadoption termination of the parental rights of a putative father or parent of a child are set out within 10 O.S. 2011 § 7505-2.1. Title 10 O.S. 2011 § 7505-2.1(A) (1) provides in pertinent part:

[p]rior to the filing of a petition for adoption, a child-placing agency, attorney, or prospective adoptive parent to whom a parent having legal custody has executed a consent to adoption or has permanently relinquished a minor born out of wedlock may file a petition for the termination of the parental rights of a putative father or a parent of the child.

Title 10 O.S. 2011 § 7505-2.1(D) further provides, in pertinent part:

D. At the hearing on the petition to terminate parental rights brought pursuant to this section, the court may, if it is in the best interest of the minor:

1. Accept a permanent relinquishment or consent to adoption executed by the putative father or parent of the minor pursuant to Sections 7503-2.1, 7503-2.3 and 7503-2.4 of this title; or

2. Terminate any parental rights which the putative father or parent may have upon any of the grounds provided in Section 7505-4.2 of this title for declaring a consent unnecessary.

¶15 Title 10 O.S. 2011 § 7505-4.2 sets out the possible exceptions to the requirement for parental consent. Specifically, 10 O.S. 2011 § 7505-4.2(C) & (D) provide:

C. Consent to adoption is not required from a father or putative father of a minor born out of wedlock if:

1. The minor is placed for adoption within ninety (90) days of birth, and the father or putative father fails to show he has exercised parental rights or duties towards the minor, including, but not limited to, failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy; or

2. The minor is placed for adoption within fourteen (14) months of birth, and the father or putative father fails to show that he has exercised parental rights or duties towards the minor, including, but not limited to, failure to contribute to the support of the minor to the extent of his financial ability, which may include consideration of his failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy. Failure to contribute to the support of the mother during her term of pregnancy shall not in and of itself be grounds for finding the minor eligible for adoption without such father's consent.

The incarceration of a parent in and of itself shall not prevent the adoption of a minor without consent.

D. In any case where a father or putative father of a minor born out of wedlock claims that, prior to the receipt of notice of the hearing provided for in Sections 7505-2.1 and 7505-4.1 of this title, he had been specifically denied knowledge of the minor or denied the opportunity to exercise parental rights and duties toward the minor, such father or putative father must prove to the satisfaction of the court that he made sufficient attempts to discover if he had fathered a minor or made sufficient attempts to exercise parental rights and duties toward the minor prior to the receipt of notice. (Emphasis Added).

¶16 The burden rests on the party who seeks adoption without parental consent to show why consent may be dispensed with. Steltzlen v. Fritz, 2006 OK 20, ¶12, 134 P.3d 141; In re Adoption of C.M.G., 1982 OK 156, 656 P.2d 262. The standard of proof necessary to establish any of the grounds to permit adoption without consent, or for termination of parental rights is clear and convincing evidence. Steltzlen, 2006 OK 20, ¶12; In re Darren Todd. H., 1980 OK 119, ¶10, 615 P.2d 287.

A. Pursuant to U.S. Const. amend. XIV, § 1; Okla. Const., art. 2, §7, Father
possessed a constitutionally-protected opportunity interest in his ability to
develop a relationship with his child that incorporated a right to notice of the
child's existence.

¶17 Both the United States Constitution and the Oklahoma Constitution provide that no person shall be deprived of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1; Okla. Const., art. 2, §7.[3] In determining whether an individual has been denied procedural due process this Court engages in a two-step inquiry. First, this Court asks whether the individual possessed a protected interest to which due process protection applies and if so, whether the individual was afforded an appropriate level of process. Thompson v. State ex rel. Bd. of Trustees of Oklahoma Public Employee Retirement System, 2011 OK 89, ¶16, 264 P.3d 1251; In re A.M., 2000 OK 82, ¶7.

¶18 The first prong of this Court's inquiry must focus on the nature of Father's protected interest. Generally, parents have a fundamental right to raise their own children, and this right is protected by the United States and Oklahoma Constitutions. In re Adoption of Baby Boy K.B., 2011 OK 94, ¶8, 264 P.3d 1258; Kelley v. Kelley, 2007 OK 100, ¶8, 175 P.3d 400. If, for whatever reason, a child's parents are unable to care for the child, adoption is a viable alternative. In re Adoption of Baby Boy K.B., 2011 OK 94, ¶8. The importance of the right to consent to an adoption has been recognized as an important right in and of itself. In re Adoption of Baby Boy K.B., 2011 OK 94, ¶8; Steltzlen v. Fritz, 2006 OK 20, ¶12,134 P.3d 141; Merrell v. Merrell, 1985 OK 107, ¶7, 712 P.2d 35. The law presumes that consent of a child's natural parents is necessary before an adoption may be effected. In re Adoption of Baby Boy K.B., 2011 OK 94, ¶8; Steltzlen, 2006 OK 20, ¶12; In re Adoption of C.D.M., 2001 OK 103, ¶13, 39 P.3d 802, cert. denied 535 U.S. 1054 (2002). However, the consent of only one natural parent and not the other is acceptable in certain situations. In re Adoption of Baby Boy K.B., 2011 OK 94, ¶8.

¶19 In the seminal case of Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), the United States Supreme Court considered the floor of due process protection afforded by the United States Constitution to natural fathers seeking to exercise or protect their parental rights. The Court noted that there is a significant difference between a developed parent-child relationship, and a potential relationship such as the one a natural father might develop with a child born out of wedlock. Lehr, 463 U.S. at 261. The Court stated:

[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," Caban, 441 U.S., at 392, 99 S.Ct., at 1768, his interest in personal contact with his child acquires substantial protection under the due process clause. At that point it may be said that he "act[s] as a father toward his children." Id., at 389, n. 7, 99 S.Ct., at 1766, n. 7. But the mere existence of a biological link does not merit equivalent constitutional protection.

Lehr, 463 U.S. at 261.

The Court went on to characterize the nature of the natural father's interest as an opportunity interest:

The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a state to listen to his opinion of where the child's best interests lie.

Lehr, 463 U.S. at 261 (footnote omitted).

The Court in Lehr was therefore concerned with whether the statutory scheme at issue in that cause, New York's, adequately protected the father's opportunity to form such a relationship.

¶20 This Court's decision In re Termination of Parental Rights of Biological Parents of Baby Boy W., 1999 OK 74, 988 P.2d 1270, applied the logic of Lehr to a cause involving the termination of a natural father's parental rights under Oklahoma's statutory scheme. In Baby Boy W., the natural father and mother went their separate ways after a relationship they had as university students. The natural father never inquired as to whether he had fathered a child, and neither party contacted the other despite knowledge of how to do so and knowledge of each other's whereabouts. Baby Boy W., 1999 OK 74, ¶4. When the mother found out she was pregnant she contacted an adoption agency and told them natural father was someone she met at a college party and she did not know his last name. Baby Boy W., 1999 OK 74, ¶5. A few days before the child's birth, the mother informed the agency of the natural father's full name and the agency advised the natural father of the hearing to terminate his parental rights. Baby Boy W., 1999 OK 74, ¶7. This was the first time the natural father knew he had fathered a child. The trial court granted the natural father's request for summary judgment and determined his consent was required for the adoption, and the agency appealed. Baby Boy W., 1999 OK 74, ¶8.

¶21 This Court agreed, holding that the natural father was denied the chance to grasp his paternal opportunity interest in contravention of due process. Baby Boy W., 1999 OK 74, ¶2. This Court stated:

[father's] conduct was sufficient considering that Natural Mother failed to provide any information to him concerning her pregnancy. After Natural Mother ended the relationship with Natural Father in January, 1997, she knew how to make contact with him, but she never informed him that he was a father.

Baby Boy W., 1999 OK 74, ¶15.

This Court unambiguously determined that the initial duty to inform the natural father of the pregnancy rested with the mother:

[u]nder the Due Process Clause, Natural Father had a right to notice of the fact that Natural Mother was pregnant and had given birth to his child. The duty to inform him rested initially with Natural Mother and later with the Agency. Both failed to inform him despite the relative ease with which this could have been accomplished. In this regard, the Agency was no less to blame than Natural Mother in denying Natural Father notice of the child's existence.

Baby Boy W., 1999 OK 74, ¶16 (emphasis added).

Finally, this Court declared:

[n]otice and opportunity lie at the heart of due process. Natural Father was deprived of notice of the pregnancy and the birth of his child and thus the chance to grasp his parental opportunity interest in his child. Under these circumstances, his parental rights cannot be terminated and his consent is necessary for adoption.

Baby Boy W., 1999 OK 74, ¶19.

¶22 The action in Baby Boy W. was brought a few days before significant changes made by the Legislature to the Oklahoma Adoption Code became effective. Baby Boy W., 1999 OK 74, n. 2.[4] Appellees assert that these changes collectively emphasize the duty of any natural father to attempt to discover if he has fathered a child. Amongst these changes, specific purposes for the Oklahoma Adoption Code were added and codified at 10 O.S. Supp. 1998 § 7501-1.2. In pertinent part, 10 O.S. 2011 § 7501-1.2(A) provides:

[t]he purpose of the Oklahoma Adoption Code is to:

..

5. Affirm the duty of a male person who has sexual relations with a female person outside of marriage to be aware that a pregnancy might occur;

6. Affirm the duty of the biological father of a child who is to be born or who is born outside of marriage to exercise his parental responsibilities for the child. This includes the duty to inform himself about the existence and needs of any such child and to exercise parental responsibilities toward that child even before birth;

¶23 Since Baby Boy W. was decided, the Legislature has also changed the statutory requirements for determining whether a natural father's consent is required for adoption of a child born out of wedlock. At the time the underlying action of Baby Boy W. was commenced, the relevant provision was 10 O.S. Supp. 1996 § 60.6 which provided in pertinent part:

[a] child under eighteen (18) years of age cannot be adopted without the consent of its parents, if living, except that consent is not required from:

..

3. The father or putative father of a child born out of wedlock if:

a. prior to the hearing provided for in Section 29.1 of this title, and having actual knowledge of the birth or impending birth of the child believed to be his child, he fails to acknowledge paternity of the child or to take any action to legally establish his claim to paternity of the child or to exercise parental rights or duties over the child, including failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy, or

b. at the hearing provided for in Section 29.1 of this title:

(1) he fails to prove that he is the father of the child, or

(2) having established paternity, he fails to prove that he has exercised parental rights and duties toward the child unless he proves that prior to the receipt of notice he had been specifically denied knowledge of the child or denied the opportunity to exercise parental rights and duties toward the child. As used in this subparagraph, specific denial of knowledge of the child or denial of the opportunity to exercise parental rights and duties toward the child shall not include those instances where the father or putative father fails to prove to the satisfaction of the court that he made a sufficient attempt to discover if he had fathered the child or to exercise parental rights and duties toward the child prior to the receipt of notice, or

c. he waives in writing his right to notice of the hearing provided for in Section 29.1 of this title, or

d. he fails to appear at the hearing provided for in Section 29.1 of this title if all notice requirements continued in or pursuant to Section 1131 of this title have been met.

The current relevant provision, found at 10 O.S. 2011 § 7505-4.2, provides in pertinent part:

C. Consent to adoption is not required from a father or putative father of a minor born out of wedlock if:

1. The minor is placed for adoption within ninety (90) days of birth, and the father or putative father fails to show he has exercised parental rights or duties towards the minor, including, but not limited to, failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy; or

2. The minor is placed for adoption within fourteen (14) months of birth, and the father or putative father fails to show that he has exercised parental rights or duties towards the minor, including, but not limited to, failure to contribute to the support of the minor to the extent of his financial ability, which may include consideration of his failure to contribute to the support of the mother of the child to the extent of his financial ability during her term of pregnancy. Failure to contribute to the support of the mother during her term of pregnancy shall not in and of itself be grounds for finding the minor eligible for adoption without such father's consent.

The incarceration of a parent in and of itself shall not prevent the adoption of a minor without consent.

¶24 Importantly, however, the defense Father asserted at the hearing to terminate his parental rights, based on specific denial of knowledge of the child and currently located at 10 O.S. 2011 § 7505-4.2(D), already existed in the statutes when Baby Boy W. was decided. At the time the cause of action in Baby Boy W. was commenced, the relevant provision was 10 O.S. Supp. 1996 § 60.6(3)(b)(2). This provision provided that consent to adoption from the father of a child born out of wedlock was not needed if, at the hearing:

having established paternity, he fails to prove that he has exercised parental rights and duties toward the child unless he proves that prior to the receipt of notice he had been specifically denied knowledge of the child or denied the opportunity to exercise parental rights and duties toward the child. As used in this subparagraph, specific denial of knowledge of the child or denial of the opportunity to exercise parental rights and duties toward the child shall not include those instances where the father or putative father fails to prove to the satisfaction of the court that he made a sufficient attempt to discover if he had fathered the child or to exercise parental rights and duties toward the child prior to the receipt of notice.

10 O.S. Supp. 1996 § 60.6(3)(b)(2); Baby Boy W., 1999 OK 74, ¶14.

¶25 In Baby Boy W., this Court noted that when the Oklahoma Adoption Code was created, this provision was recodified in 10 O.S. § 7505-4.2. Baby Boy W., 1999 OK 74, ¶14. In its current incarnation, 10 O.S. 2011 § 7505-4.2(D) provides:

[i]n any case where a father or putative father of a minor born out of wedlock claims that, prior to the receipt of notice of the hearing provided for in Sections 7505-2.1 and 7505-4.1 of this title, he had been specifically denied knowledge of the minor or denied the opportunity to exercise parental rights and duties toward the minor, such father or putative father must prove to the satisfaction of the court that he made sufficient attempts to discover if he had fathered a minor or made sufficient attempts to exercise parental rights and duties toward the minor prior to the receipt of notice.

An examination of the language of this provision indicates that it has remained substantially the same.

¶26 This Court's holding in Baby Boy W. indicates that because of due process concerns and the importance of Father being given a chance to exercise his opportunity interest, the requirements of 10 O.S. 2011 § 7505-4.2(D) are met if the mother fails to inform a natural father of her pregnancy. That duty initially rests on her shoulders. This Court stated of the defense now found at 10 O.S. §7505-4.2(D):

This is the standard by which Natural Father's actions must be measured and that standard has been met .. His conduct was sufficient considering that Natural Mother failed to provide any information to him concerning her pregnancy.

Baby Boy W., 1999 OK 74, ¶15.

¶27 In Steltzlen v. Fritz, 2006 OK 20, 134 P.3d 141, this Court revisited whether a natural father's consent was necessary for a child's adoption. In Steltzlen, this Court determined that the trial court did not abuse its discretion when it ruled that a child born out of wedlock was not eligible for adoption without the natural father's consent. 2006 OK 20, ¶1. The natural father and mother in Steltzlen had a brief sexual relationship while they worked together. 2006 OK 20, ¶3. Shortly after their last sexual contact, they ceased working together, and the natural father's next contact with the mother was when they ran into each other by chance when she was seven months pregnant. Steltzlen, 2006 OK 20, ¶4. The mother indicated it was possible that he might be the father, and the natural father offered to take a DNA test, which the mother declined. Steltzlen, 2006 OK 20, ¶4. Because of this and because he had no further contact from mother, the natural father believed he was not the father of the child. Steltzlen, 2006 OK 20, ¶4.

¶28 The natural father in Steltzlen only discovered he was the father a couple of years after the birth, when, similar to this cause, he received notice of guardianship proceedings. 2006 OK 20, ¶7. The natural father immediately became involved, paternity was established by DNA testing, and he contested the petition for adoption of the child without his consent. Steltzlen, 2006 OK 20, ¶10. The trial court denied the adoption petition and the prospective adoptive parents appealed.

¶29 This Court reiterated its decision in Baby Boy W., and stressed the importance of the natural father receiving notification. Steltzlen, 2006 OK 20, ¶10. Specifically, this Court stated:

[i]t is not disputed that after the chance meeting at the thrift store, mother did nothing further to contact the father, to let him know that the child had been born or that he was the father of the child. Mother essentially turned the custody and care of [the child] over to the petitioner and her daughter. It is not disputed that neither the petitioner nor [mother's roommate], though they had assumed the care and responsibility for raising the child, attempted to contact the father until they sought to become [the child's] guardians. In In re Biological Parents of Baby Boy W, 1999 OK 74, 988 P.2d 1270, we said that under the due process clause, the father had a right to notice of the fact that the mother was pregnant and had given birth to his child. The duty to inform the father rests initially with the mother, and later with the adoption agency, but both failed to inform him, despite the relative ease with which this could have been accomplished. 988 P.2d at 1274. We said that the adoption agency in that case was no less to blame than the mother in denying the father notice of the child's existence. Id. We affirmed the trial court's determination that the natural father did everything he reasonably could have done under the circumstances and that his conduct was sufficient considering that the natural mother failed to provide any information to him concerning her pregnancy. We held that the natural Mother's actions constituted specific denial of knowledge of the child and offered a complete defense to the termination of father's parental rights.

Steltzlen, 2006 OK 20, ¶16.

¶30 A core element to this Court's decisions in both Steltzlen and Baby Boy W. is that a distinction exists between: 1) causes where the natural fathers of children born out of wedlock failed to seize their parental opportunity interest when the opportunity was presented to do so[5]; and 2) causes involving a father's allegation that he was denied the chance to seize that opportunity interest because he never knew about the child. Steltzlen, 2006 OK 20, ¶17. Stated another way, Lehr held that natural fathers possess a constitutionally-protected opportunity interest in the ability to develop a relationship with their children born out of wedlock that they must choose to pursue if they desire legal protection of that interest. Lehr, 463 U.S. at 262. Pursuant to Baby Boy W. and Steltzlen, this Court has determined that natural fathers in Oklahoma are denied due process when their parental rights are terminated despite them never being given a chance to pursue their opportunity interest because they were never given notice of the child's existence. See Steltzlen, 2006 OK 20, ¶16-17; Baby Boy W., 1999 OK 74, ¶2.

¶31 Though in Steltzlen this Court noted the purposes added to the Oklahoma Adoption Code at 10 O.S. 2011 § 7501-1.2, this Court did not deviate from its determination in Baby Boy W. that the initial burden to notify the natural father rested with the mother because of due process concerns. Under the specific facts of Steltzlen, the natural father discovered the pregnancy when he ran into the mother at a thrift store while she was seven months pregnant. She told him at that time the child might be the product of their sexual relationship, and he offered to take a DNA test, which she refused. Steltzlen, 2006 OK 20, ¶4. The Court reiterated its holding in Baby Boy W., that under the due process clause, father had a right to notice of the fact that the mother was pregnant and had given birth to his child. Steltzlen, 2006 OK 20, ¶16 (citing Baby Boy W., 1999 OK 74).

¶32 More recently, in In re Adoption of Baby Boy K.B., 2011 OK 94, 264 P.3d 1258, this Court once again referenced its decision in Baby Boy W. and specifically stressed the importance of a natural father being given the chance to seize his opportunity interest by being notified of the existence of the child. Baby Boy K.B., 2011 OK 94, ¶8. These decisions are all in accord that, in Oklahoma, the natural father of a child born out of wedlock is entitled to notice of the existence of the child so that the natural father has a chance to exercise his opportunity interest in developing a relationship with the child.[6]

B. Notice provided only via Facebook does not satisfy the notice requirements
of U.S. Const. amend. XIV, § 1 and Okla. Const., art. 2, §7.

¶33 Having established that Father was constitutionally entitled to notice of the existence of the child before his rights could be terminated for failure to exercise his opportunity interest, this Court must now determine whether Father received that notice. In other words, was Father afforded appropriate due process. In re A.M. & R.W., 2000 OK 82, ¶7, 13 P.3d 484.[7] Notice and opportunity lie at the heart of due process. Baby Boy W., 1999 OK 74, ¶19. See Shamblin v. Beasley, 1998 OK 88, n. 32, 967 P.2d 1200; Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Appellees assert that Father was provided notice of the pregnancy by Mother via Facebook, though Father claims he did not see the message until after the child's birth.

¶34 The classic statement of constitutionally adequate notice is that which is reasonably calculated, under the circumstances, to inform interested persons of the pending litigation and to afford them an opportunity to advocate their interest in the cause. Booth v. McKnight, 2003 OK 49, ¶20, 70 P.3d 855. This statement has its origin in the United States Supreme Court Case Mullane v. Central Hanover Bank & Trust Co, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In Mullane, the Court determined that when notice is a person's due, process which is a mere gesture is not due process. 339 U.S. at 315. The Court further stated:

The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, with Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

Mullane, 339 U.S. at 315.

¶35 This Court does not believe that attempts to provide notice via Facebook comport with the requirements of due process. While the adequacy of Facebook as a means of providing notice in a due process context is an issue of first impression in Oklahoma, to date only one federal court--of at least three that have considered the issue--has allowed service of process via Facebook and even then only as a supplementary means of providing notice.[8]

¶36 Nothing in the record of this cause indicates that more direct contact with Father was impossible so that Mother was required to rely upon an indirect method such as Facebook to notify him of her pregnancy. Indeed, the record indicates she came to Father's workplace to see him roughly six weeks after their last sexual encounter. There is no indication in the record she knew she was pregnant at the time, and it is quite possible that she did not know, however it does demonstrate she knew where to find Father to talk to him in person and had no qualms about doing so. The record does not indicate she made any effort to visit Father again after this date, while he was still employed, to tell him of the pregnancy. The record also does not indicate Mother made any other reasonable effort to contact Father directly and notify him. Mother was present at the hearing due to Father's subpoena, and might have been able to provide further detail regarding her efforts to contact father, were it not for the trial court's erroneous decision to grant Appellees' motion for a directed verdict.

¶37 Instead of contacting Father directly, Mother left him a message on Facebook, which is an unreliable method of communication if the accountholder does not check it regularly or have it configured in such a way as to provide notification of unread messages by some other means. This Court is unwilling to declare notice via Facebook alone sufficient to meet the requirements of the due process clauses of the United States and Oklahoma Constitutions because it is not reasonably certain to inform those affected. Booth, 2003 OK 49, ¶20; Mullane, 339 U.S. at 315. It is, rather, a mere gesture. Mullane, 339 U.S. at 315.

C. Termination of Father's parental rights was not supported by clear and convincing evidence.

¶38 Because of the truncated hearing on Appellee's petition to terminate Father's parental rights, there is a dearth of evidence in the record. It cannot be ascertained with certainty when Father actually learned he had fathered a child. It cannot be fully ascertained what actions Father may have taken to exercise his opportunity interest to develop a relationship with the child and exercise his parental rights after he knew of the child's existence. Pursuant to 10 O.S. 2011 § 7505-2.1(D), in order to terminate Father's parental rights the trial court was required to determine that clear and convincing evidence indicated: 1) that termination of Father's parental rights was in the best interests of the child; and 2) termination under one of the grounds provided in 10 O.S. 2011 § 7505-4.2 was appropriate.

¶39 There is nothing in the record before this Court to indicate the trial court ever made a determination that termination of Father's parental rights was in the best interest of the child, pursuant to 10 O.S. 2011 § 7505-2.1(D). Further, the record contains essentially no information concerning Father's attempts to exercise parental rights and duties towards the child after he received the constitutionally-required notice of the child's existence. The grounds for termination provided for in 10 O.S. 2011 § 7505-4.2(C) require consideration of more factors than just the extent of Father's support of the mother during pregnancy. See In re Adoption of Baby Boy K.B., 2011 OK 94, ¶13, 264 P.3d 1258. Because of the dearth of evidence in the record, this Court cannot say that clear and convincing evidence is present in the record such that a trier of fact could reasonably form a firm belief or conviction that the grounds for termination were proven. In re C.D.P.F., 2010 OK 81, ¶6; In re S.B.C., 2002 OK 83, ¶6. Rather, because it made an erroneous legal conclusion regarding Father's due process rights, the trial court prematurely cut off the gathering of evidence.

IV.

CONCLUSION

¶40 Pursuant to this Court's decision in Baby Boy W. and its progeny, Father had a right, under the Due Process Clause, to notice of the fact that Mother was pregnant with his child. 1999 OK 74, ¶16 & ¶19. See Steltzlen, 2006 OK 20, ¶16; Baby Boy K.B., 2011 OK 94, ¶8. Mother allegedly informing Father of her pregnancy via a Facebook message was insufficient to satisfy the notice requirement of due process. Booth, 2003 OK 49, ¶20; Mullane, 339 U.S. at 315.

¶41 The trial court erred as a matter of law by incorrectly determining that it made no difference when and if Father received notice of the pregnancy because the obligation to discover if he fathered a child was placed squarely on his shoulders. That determination was not in keeping with prior controlling decisions of this Court. Mother's failure to properly notify father of the pregnancy at any point constituted specific denial of knowledge of the child within the meaning of the language of 10 O.S. 2011 § 7505-4.2(D). Father was deprived of notice of the pregnancy and the birth of his child and thus the chance to grasp his parental opportunity interest in his child. Baby Boy W., 1999 OK 74, ¶19. Under these circumstances, the termination of Father's parental rights pursuant to 10 O.S. 2011 § 7505-4.2(C), based on his conduct when there is no clear and convincing evidence he had knowledge of the pregnancy or birth of the child, violated Father's right to due process under the Oklahoma and United States Constitutions.

¶42 Given the state of the record, there is not clear and convincing evidence to support a determination that termination of Father's parental rights was in the best interests of the child and that termination of those rights was appropriate pursuant to 10 O.S. 2011 § 7505-4.2, in light of actions taken by Father after he learned of Mother's pregnancy and the child's existence. The trial court ruled on the termination of Father's parental rights prematurely by granting Appellees' Motion for a Directed Verdict, a ruling which was based upon an erroneous legal conclusion regarding Father's due process rights and the nature of his opportunity interest. This cause is hereby remanded to the trial court for proceedings consistent with this opinion. Given the state of the record and the fact that this cause is being remanded to the trial court, the Court does not address Father's claim of ineffective assistance of counsel.

COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF THE
TRIAL COURT IS REVERSED; CAUSE REMANDED FOR
PROCEEDINGS CONSISTENT WITH THIS OPINION

Colbert, C.J., Reif, V.C.J., Kauger, Watt, Edmondson, and Combs, JJ., concur.

Winchester (by separate writing), Taylor, and Gurich, JJ., dissent.

FOOTNOTES

[1] Title 10 O.S. 2011 § 7501-1.3 (12) provides:

"Putative father" means the father of a minor born out of wedlock or a minor whose mother was married to another person at the time of the birth of the minor or within the ten (10) months prior to the birth of the minor and includes, but is not limited to, a man who has acknowledged or claims paternity of a minor, a man named by the mother of the minor to be the father of the minor, or any man who is alleged to have engaged in sexual intercourse with a woman during a possible time of conception.

[2] A review of the record and filings reveals that Appellees' failure to receive notice of the appeal and appropriate documents is likely the result of an address change on the part of counsel for Appellees sometime prior to commencement of the appeal. Pursuant to 12 O.S. 2011 § 2005.2(E), counsel for Appellees had a duty to notify the district court and other parties of any address change. Title 12 O.S. 2011 § 2005.2 provides in pertinent part:

D. ADDRESS OF RECORD. The address of record for any attorney or party appearing in a case pending in any district court shall be the last address provided to the court. The attorney or unrepresented party must, in all cases pending before the court involving the attorney or party, file with the court and serve upon all counsel and unrepresented parties a notice of a change of address. Any attorney or unrepresented party has the duty of maintaining a current address with the court. Service of notice to the address of record of counsel or an unrepresented party shall be considered valid service for all purposes, including dismissal of cases for failure to appear.

E. NOTICE OF CHANGE OF ADDRESS. All attorneys and unrepresented parties shall give immediate notice to the court of a change of address by filing notice with the court clerk. If the attorney or unrepresented party has provided written consent to receive service by electronic means pursuant to subsection A of this section, or in another pleading, the attorney or party shall include a change of electronic mailing address as part of the notice required in this subsection. The notice of the change of address shall contain the same information required in the entry of appearance, shall be served on all parties, and a copy shall be provided to the assigned judge. If an attorney or an unrepresented party files an entry of appearance, the court will assume the correctness of the last address of record until a notice of change of address is received. Attorneys of record who change law firms shall notify the court clerk and the assigned judge of the status of representation of their clients, and shall immediately withdraw, when appropriate.

On appeal, this same requirement is governed by Oklahoma Supreme Court Rule 1.5, 12 O.S. Supp. 2013, Ch. 15, App. 1, which provides in pertinent part:

(c) Notice of Change of Address. All attorneys and parties representing themselves shall give immediate notice to the Clerk of the Supreme Court of a change of address, including email address, if applicable, using the form prescribed by Rule 1.301 Form No. 3. The notice of change of address shall be served on all parties. If an attorney or a party representing himself or herself files an entry of appearance, the Court will assume the correctness of the last address of record, as defined in section (d), or in the absence of such address change, the address stated in the entry of appearance until a notice of change of address is received.

(d) Address of Record. The address of record, including email address, if applicable, for any attorney or party appearing in a case pending before the Supreme Court, Court of Civil Appeals, or Court of Tax Review, shall be the last address provided to the court. The attorney or party representing himself or herself must, in all cases pending before the court involving the attorney or party, file with the court and serve upon all counsel and parties representing themselves a notice of a change of address. An address change made pursuant to this rule shall apply to all cases pending before the Supreme Court, Court of Civil Appeals, and the Court of Tax Review. The attorney or party representing himself or herself has the duty of maintaining a current address with the courts.

The original Petition for Termination of Parental Rights of Natural Parents filed by Appellees, and multiple subsequent filings, show an address for counsel of 1112 S. Boston Ave., Rogers, OK 74119. The first indication in the record that counsel for Appellees address was no longer this location is Appellees' Answer Brief to Appellant's Petition in Error, where Appellees first complained they were not notified of the appeal. No actual attempt to note a change of address appears in the filings until Appellees filed a Motion for Extension of Time to respond to Appellant's Petition for Certiorari because it was sent to the incorrect prior address. The Court would like to take this opportunity to stress that it is counsel's obligation to notify the courts and other parties of any change of address in order to prevent this sort of confusion from occurring.

[3] Oklahoma's due process clause has a definitional sweep that is coextensive with its federal counterpart. Gladstone v. Bartlesville Indep. School Dist. No. 30, 2003 OK 30, n. 16, 66 P.3d 442; Fair School Finance Council of Oklahoma, Inc. v. State, 1987 OK 114, n. 48, 746 P.2d 1135. However, the States, in exercise of their sovereign power, may afford more expansive individual rights and liberties than those conferred by the United States Constitution. Turner v. City of Lawton, 1986 OK 51, ¶10, 733 P.2d 375. This Court stated in Daffin v. State ex rel. Oklahoma Dept. of Mines, 2011 OK 22, n. 20, 251 P.3d 741 (quoting Alva State Bank and Trust Co. v. Dayton, 1988 OK 44, ¶7, 755 P.2d 635 (Kauger, J., concurring specially)):

"[T]he people of this state are governed by the Oklahoma Constitution, and when it grants a right or provides a principle of law or procedure beyond the protections supplied by the federal constitution, it is the final authority.This is so even if the state constitutional provision is similar to the federal constitution. [emphasis added]. The United States Constitution provides a floor of constitutional rights-state constitutions provide the ceiling. [emphasis in original].

This Court's holdings with regard to state constitutional questions are based on Oklahoma law, which provides bona fide, separate, adequate and independent grounds for our decision. Daffin, 2011 OK 22, n. 21; Gaylord Entertainment Co. v. Thompson, 1998 OK 30, ¶51, 958 P.2d 128; Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

[4] 1997 Okla. Sess. Laws Ch. 366 (H.B. 1241) renamed the Oklahoma Adoption Act to the Oklahoma Adoption Code, renumbered the Code, and added or modified many provisions. The effective date for most of those changes was November 1, 1997.

[5] See, e.g., White v. Adoption of Baby Boy D., 2000 OK 44, 10 P.3d 212 (Petitioner was aware of pregnancy and birth of his child but "wholly failed to grasp even one of the many opportunities he had to establish [the] parental relationship.").

[6] One jurist on the New York Court of Appeals explained the logic inherent in this approach:

The man who has not been told of the pregnancy has few, if any, avenues of recourse.

Indeed, although the majority has not hesitated to assign blame to petitioner because of what it terms his "inaction," it has not even begun to identify just what it is that petitioner might have done to fulfill his responsibilities in these circumstances. Does the majority mean to suggest that all men who engage in sexual intercourse with women to whom they are not married must remain in regular contact with them even after their relationships have terminated in order to ascertain whether there has been a pregnancy? Must they also make inquiries in the community or pursue alternative sources of information in order to definitively rule out the possibility that the relationship may have produced a child? . . .

Moreover, a rule that requires men to foist continued contact on women with whom they are no longer involved overlooks women's interest in preserving their own privacy after the relationship has been terminated.

Robert O. v. Russell K., 604 N.E.2d 99, 106 (N.Y. 1992) (TITONE, J., concurring).

[7] It is necessary to point out that Father is not, on appeal, making a due process challenge in connection to the termination hearing itself. He was properly served and given the opportunity to appear at the hearing. Rather, he is asserting that his procedural due process rights were violated because the state stripped him of a protected opportunity interest that he never had the opportunity to exercise, because he did not have notice of it. In Baby Boy W., 2000 OK 82, ¶19, this Court determined that notice of the pregnancy was an inherent part of this protected opportunity interest.

[8] In F.T.C. v. PCCare247 Inc., No. 12 Civ. 7189(PAE), 2013 WL 841037 (S.D.N.Y. Mar. 7, 2013), the United States District Court for the Southern District of New York authorized, for the sake of thoroughness, service of process via Facebook in addition to email when all attempts to accomplish traditional service of process had failed. PCCare247 Inc., 2013 WL 841037, at *5. The unreliability of this method is easily evident from the court's description:

[t]he FTC would send a Facebook message, which is not unlike an email, to the Facebook account of each individual defendant, attaching the relevant documents. Defendants would be able to view these messages when they next log on to their Facebook accounts (and, depending on their settings, might even receive email alerts upon receipt of such messages). . . .

To be sure, if the FTC were proposing to serve defendants only by means of Facebook, as opposed to using Facebook as a supplemental means of service, a substantial question would arise whether that service comports with due process.

PCCare247 Inc., 2013 WL 841037, at *5.

The Court readily acknowledged that service of Facebook was a relatively novel concept and that it was conceivable that the defendants would not in fact receive notice by that means, which is why it determined Facebook was only suitable as a supplementary form of service. PCCare247 Inc., 2013 WL 841037, at *5.

Other federal courts have refused to go even so far as to allow Facebook as a supplementary means of satisfying the notice requirement of due process. See Joe Hand Promotions, Inc. v. Carrette, No. 12-2633-CM (D. Kan. July 9, 2013); Joe Hand Promotions, Inc. v. Stephen Shepard, No. 4:12cv1728 SNLJ (E.D. Mo. Aug. 12, 2013).

While pronouncement of a federal law question by an inferior federal court is not binding on this Court, it is persuasive. Mehdipour v. State ex rel. Dept. of Corrections, 2004 OK 19, ¶18, 90 P.3d 546; Akin v. Missouri Pacific R. Co., 1998 OK 102, ¶30, 977 P.2d 1040. It is also instructive in providing guidance on similar state law questions. Mehdipour, 2004 OK 19, ¶18. See Payne v. Dewitt, 1999 OK 93, n. 6, 995 OK 1088.

WINCHESTER, J., dissenting, with whom TAYLOR and GURICH, JJ. join:

¶1 Two conclusions by this Court appear to be unsupported and unsupportable by the record before this Court. I do not agree that the Father's due process rights were violated by the Mother's attempt to provide notice via Facebook. Nor do I agree that the judgment of the court was erroneous, given the facts that were uncontested and the statutes the trial court was obligated to follow.

I. THE BALANCING OF RESPONSIBILITY

¶2 The majority opinion cites the specific changes to the Oklahoma Adoption Code, and quotes 10 O.S.2011, § 7501-1.2(A), which provides:

"A. The Legislature of this state believes that every child should be raised in a secure, loving home and finds that adoption is the best way to provide a permanent family for a child whose biological parents are not able or willing to provide for the child's care or whose parents believe the child's best interest will be best served through adoption. The purpose of the Oklahoma Adoption Code is to:

. . . .

"5. Affirm the duty of a male person who has sexual relations with a female person outside of marriage to be aware that a pregnancy might occur;

"6. Affirm the duty of the biological father of a child who is to be born or who is born outside of marriage to exercise his parental responsibilities for the child. This includes the duty to inform himself about the existence and needs of any such child and to exercise parental responsibilities toward that child even before birth. . . ."

¶3 The legislature has clearly pronounced its intent. The duty of the male who has sexual relations with a female is (1) to be aware that a pregnancy might occur and (2) to inform himself. He cannot complacently wait for the female to find him in the event of a pregnancy. In this case the Mother tried to inform the father. There was no evidence that he attempted to learn anything. After the legislature had made its intent known, the majority opinion still maintains that the responsibility of informing a father lies fully with the female.

¶4 The Father's testimony reveals that during the times they were having intercourse, the Mother was seventeen years old and he was twenty to twenty-one years old. He testified that he knew where she lived, knew her full name and had her telephone number. When asked, "What steps did you take to determine that she wasn't pregnant after you had intercourse the last time?" His answer was "None." He was also asked, "[D]id you ever attempt to contact her and she denied contact with you?" He answered, "No." He was asked how long it took for her to respond to him when he finally tried to contact her, he answered "within a day, maybe longer." No testimony indicates that knowledge about the Mother's pregnancy was kept from him.

¶5 At the conclusion of the testimony of the father, who was the only witness called to testify, the biological Mother's attorney moved for a directed verdict, which motion was joined by the petitioners. The court asked for a response from the other parties present, and received no objections. The court granted the motion, finding in support that the Father's own testimony proved he had failed prior to the child's birth to determine if a child was going to be born, and failed to support, according to his means, the Mother of the child through her living expenses, medical expenses, and maternity expenses. The court further found that the Father did not do anything to assert his rights as a father other than showing up for the guardianship. At that point the court found that the adoption should proceed without the consent of the Father and terminated his parental rights.

¶6 The transcript reveals that the trial court concluded the applicable law required the Father to inquire about whether the Mother had become pregnant. The judge and attorneys discussed 10 O.S.2011, § 7505-4.2(D) , which provides:

D. In any case where a father or putative father of a minor born out of wedlock claims that, prior to the receipt of notice of the hearing provided for in Sections 7505-2.1 and 7505-4.1 of this title, he had been specifically denied knowledge of the minor or denied the opportunity to exercise parental rights and duties toward the minor, such father or putative father must prove to the satisfaction of the court that he made sufficient attempts to discover if he had fathered a minor or made sufficient attempts to exercise parental rights and duties toward the minor prior to the receipt of notice.

No one argued that the Father was denied knowledge of the minor or denied an opportunity to exercise parental rights or duties.

¶7 Although the Father admits he had received notice of the child's birth on Facebook, he claims he did not see the notice until he tried to contact the Mother, on Facebook, regarding guardianship of the child. He testified he did not know how old the message was. Facebook has two methods of sending information. A message may be posted to an area that all "friends" on Facebook may view it, or it may be posted to a private area that is more like an email. Either way, all messages are dated. The transcript does not identify which method the Mother used. The Father admitted they were Facebook "friends" and that he used that method to contact her when he found out about the guardianship. He acknowledged that Facebook contained a message to him from the Mother that she was pregnant and that she wanted to place the baby for adoption. The text of the message as the Father recalls was "something about I'm pregnant, little girl, I'm putting her up for adoption."

¶8 Admitting the message was there, the Father either saw it and ignored it, or did not see it and wishes the trial court to conclude that the pregnancy was kept from the father. The majority opinion concludes that the "Mother allegedly informing Father of her pregnancy via a Facebook message was insufficient to satisfy the notice requirement of due process." There is no "allegation" of a Facebook message as the majority opinion states. The Father admits there was a message. Either he had actual notice or he had constructive notice.

¶9 If this Court wishes to hold, as a matter of law, that notice was withheld from him, then 10 O.S.2011, § 7505-4.2(D) applies and the Father should have attempted to discover if he had fathered a child. If he had notice, then the Father should have taken action then to support the Mother during the process of her pregnancy. Either way, the Father's action or inaction supports the trial court's decision to terminate the Father's parental rights. Whether or not he actually viewed that message is not a question of law, it is a question of fact. Because the trial court was the fact finder, the court had the authority to decide whether the Father viewed that notice before the baby was born. Further, we are required to give deference to the trial court's view of the evidence and the assessment of the veracity of the witnesses.

¶10 The trial court recognized the Father's duty, pursuant to statute, (1) to be aware that a pregnancy might occur and (2) to inform himself. By his own testimony, he could have informed himself by contacting the Mother, and did not even attempt to. The majority opinion does not declare unconstitutional the obligation placed by the legislature on the Father, yet the majority opinion returns the full burden to the Mother regarding notice.

II. THE NOTICE REQUIREMENT

¶11 The majority opinion does not inform the biological mother precisely what notice is needed to satisfy this Court. The rule has been long accepted that, "Actual notice is the preferred method of satisfying due process requirements. . . ." In re Dana P. 1982 OK 149, ¶ 9, 656 P.2d 253, 255. The Facebook message was actual notice. The Father testified that Facebook was his method to contact the Mother after he learned of the guardianship and that he reached her within twenty-four hours. Why would Facebook be any less reliable than other forms of electronic communication? Does the Court require a face-to-face confrontation with witnesses? Face-to-face discussions can be denied; letters can remain unopened; and faxes can be lost.

¶12 Osprey L.L.C. v. Kelly-Moore Paint Co., 1999 OK 50, ¶ 15, 984 P.2d 194, 199, held, "The purpose of providing notice by personal delivery or registered mail is to insure the delivery of the notice, and to settle any dispute which might arise between the parties concerning whether the notice was received. A substituted method of notice which performs the same function and serves the same purpose as an authorized method of notice is not defective." In the Osprey case, a lessee sent a fax to confirm a desire to continue a lease for another five years. The renewal terms stated that notice may be delivered either personally or by depositing the same in United States mail, first class postage prepaid, registered or certified mail, return receipt requested. The lessor even denied receiving the fax, but this Court recognized an electronic record showing that the fax activity report and telephone company records confirmed that the fax was transmitted successfully and that it was sent to Osprey's correct facsimile number. Osprey, 1999 OK 50, ¶ 6, 984 P.2d at 196. Actual notice satisfies due process just as formally approved methods do. The record contains an admission from the Father that his Facebook account contained notice. He just claims he did not read it.

¶13 Oklahoma law recognizes the efficacy of electronic transactions where parties to electronic transactions have agreed to transact business through that method. Forty-seven states, the District of Columbia, Puerto Rico, and the Virgin Islands have adopted the Uniform Electronic Transactions Act (UETA). Oklahoma has codified this act as 12A O.S.2011, §§ 15-101 through 15-121. Three states, Illinois, New York and Washington, which have not adopted the UETA have statutes pertaining to electronic transactions. The UETA is found within the Uniform Commercial Code and applies to transactions. A transaction is defined as "an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs." The point is not whether the UETA applies to the case before the court; the relevance is that electronic transactions are deemed by all states to be dependable enough to bind parties in business, commercial and governmental affairs.

¶14 In addition, Facebook is a dependable method for communication, enough so that the Father admits that the mother and the Father chose to communicate through that method. What happened when he received service about the guardianship? The transcript says that when he initiated contact with the mother he did it through Facebook. There is no support for an argument that Facebook is less dependable as an actual notice than a fax, a letter or some form of email other than Facebook. Neither is there a sound argument that actual notice does not satisfy due process.

¶15 The trial court did not err as a matter of law by determining it made no difference when and if the Father received notice of the pregnancy if 10 O.S.2011, § 7505-4.2(D) means what it says, "such father or putative father must prove to the satisfaction of the court that he made sufficient attempts to discover if he had fathered a minor. . . ." The requirement certainly is placed squarely on his shoulders, and this Court has cited no authority to show why such a statute would be unconstitutional. As I have previously said, either the Father was told and failed to act or was intentionally not told and failed to show any attempt to learn of a pregnancy. The majority view states that "Mother's failure to properly notify father of the pregnancy at any point constituted specific denial of knowledge of the child within the meaning of 10 O.S.2011, § 7505-4.2(D)." If that is so, then the father had a duty to find out pursuant to the very statute cited. Leaving all the responsibility to the mother is an archaic view of parenthood. The Father does not claim he did not know that his actions could produce a child. He testified to more than one occasion of sexual intercourse. The fact that he did nothing to find out shows a lack of responsibility.

¶16 The Court of Civil Appeals properly affirmed the judgment of the trial court.

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 51, 733 P.2d 375, 57 OBJ 1904, Turner v. City of Lawton
Discussed
 1987 OK 114, 746 P.2d 1135, 58 OBJ 3282, Fair School Finance Council of Oklahoma, Inc. v. State
Discussed
 1988 OK 44, 755 P.2d 635, 59 OBJ 1159, Alva State Bank and Trust Co. v. Dayton
Discussed
 2001 OK 103, 39 P.3d 802, 72 OBJ 3648, IN RE ADOPTION OF C.D.M.
Discussed
 2002 OK 83, 64 P.3d 1080, IN THE MATTER OF S.B.C.
Discussed at Length
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed
 2003 OK 49, 70 P.3d 855, BOOTH v. McKNIGHT
Discussed at Length
 2004 OK 19, 90 P.3d 546, MEHDIPOUR v. STATE ex rel. DEPT. OF CORRECTIONS
Discussed at Length
 2006 OK 20, 134 P.3d 141, STELTZLEN v. FRITZ
Discussed at Length
 2007 OK 100, 175 P.3d 400, KELLEY v. KELLEY
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 2010 OK 81, 243 P.3d 21, IN THE MATTER OF C.D.P.F.
Discussed at Length
 2011 OK 22, 251 P.3d 741, DAFFIN v. STATE ex rel. OKLAHOMA DEPT. OF MINES
Discussed at Length
 2011 OK 89, 264 P.3d 1251, THOMPSON v. STATE ex rel. BD. OF TRUSTEES OF OKLA. PUBLIC EMPLOYEES RETIREMENT SYSTEM
Discussed
 2011 OK 94, 264 P.3d 1258, IN THE MATTER OF THE ADOPTION OF BABY BOY K.B.
Discussed at Length
 2014 OK 37, 327 P.3d 530, PIERCE v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed at Length
 1980 OK 119, 615 P.2d 287, Adoption of Darren Todd H., Matter of
Discussed
 1999 OK 93, 995 P.2d 1088, 70 OBJ 3452, Payne v. DeWitt
Cited
 2000 OK 44, 10 P.3d 212, 71 OBJ 1583, WHITE v. ADOPTION OF BABY BOY D.
Discussed
 1982 OK 140, 656 P.2d 253, Dana P. v. State
Cited
 1982 OK 156, 656 P.2d 262, Adoption of C.M.G., Matter of
Discussed
 2000 OK 82, 13 P.3d 484, 71 OBJ 2668, IN THE MATTER OF A.M. & R.W.
Discussed at Length
 1998 OK 30, 958 P.2d 128, 69 OBJ 1404, GAYLORD ENTERTAINMENT CO. v. THOMPSON
Discussed
 1998 OK 88, 967 P.2d 1200, 69 OBJ 3098, Shamblin v. Beasley
Discussed
 1998 OK 102, 977 P.2d 1040, 69 OBJ 3512, Akin v. Missouri Pacific Railroad Co.
Discussed
 1999 OK 50, 984 P.2d 194, 70 OBJ 1809, Osprey L.L.C. v. Kelly-Moore Paint Co.
Discussed at Length
 1999 OK 74, 988 P.2d 1270, 70 OBJ 2677, In re Termination of the Parental Rights of the Biological Parents of Baby Boy W.
Discussed at Length
 1985 OK 107, 712 P.2d 35, 57 OBJ 40, Merrell v. Merrell
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 60.6, Renumbered as 10 O.S. § 7505-4.2 by Laws 1997, HB 1241, c. 366, § 58, eff. November 1, 1997
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2005.2, Entry of Appearance, Out-of-State Counsel, Address of Record and Withdrawal
Discussed
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
Title 12A. Uniform Commercial Code
 Cite
Name
Level

 12A O.S. 15-101, Short Title
Cited